BENJAMIN GODFREY, Pltff in Error, v. the CITY OF ALTON, Deft in Error.

### ERROR TO MADISON.

If the owners of land agree upon a place, and make a survey, and lay off ground for public use, as a street or landing, and make sales in reference thereto, it amounts to a dedication of such ground to the public. A map is not essential to the validity of the dedication.

## Godfrey v. The City of Alton.

The statute of frauds does not apply to the dedication of ground to the public.

A dedication may be made by grant, or written instrument; it may be evidenced by acts and declarations without writing, no particular form being required to establish its validity, it being purely a question of intention.

A dedication may be made by survey and plat alone, without any declaration, either oral or on the plat; when it is evident from the face of the plat that it was intended to set apart certain grounds for the use of the public.

A dedication must be understood and construed, with reference to the objects and purposes for which it was made.

All accessions to a public landing, must necessarily attach to and form a part of it.

When an easement is granted to the public, upon the margin of a navigable stream, the right to use and treat it as a landing is undoubted.

If the banks of a navigable river are dedicated, the dedicator has no interest in the bed of the stream which he can reserve, to the prejudice of the public easement over it.

After verdict found upon several pleas, one may be withdrawn, the defendant being entitled to a judgment, if the verdict can be sustained on any one of the pleas. An erroneous verdict as to one plea does not vitiate the finding upon the others.

This was an action, trespass *quare clausum freget*, brought by Godfrey against the City of Alton.

The declaration alleges that defendant broke and entered the close of plaintiff, described as follows: "A certain lot of land lying within the corporate limits of the city of Alton, and situated within Godfrey's and Gilman's addition to the town, now city of Alton; being in front of block number ninety-two, and separated therefrom by a forty foot street, and bounded on the North by said forty foot street; on the South, by the Mississippi river; on the East, by the lot known as the Ferry lot, at the foot of State street; and on the West, by the land known as the Penitentiary Tract, in said city of Alton."

Damages, three thousand dollars.

1st Plea—Not Guilty.

2d Plea—That the close was a public highway.

3d Plea—*Liberum Tenementum.*

4th Plea—Dedication of said close, by Winthrop S. Gilman, to the public street.

5th Plea—Dedication of said close, by Winthrop S. Gilman and Benjamin Godfrey.

Issues to the Country upon all the pleas.

Upon the trial the defendant admitted the commission of the acts, upon the premises, as set forth in the declaration; and it was proven that the damages were at least twenty-five dollars.

The plaintiff proved title to the fractional quarter section extending to the river, upon which the *locus in quo* is situated.

Abraham Breath, witness for plaintiff, testified, that Godfrey

and Gilman occupied from 1832 to 1841 the warehouses situated upon lots 1 and 2, in block 92, and in front of the *locus in quo ;* used the land in front of said block—it being the *locus in quo*— for receiving and shipping goods from and on board steamboats, in common with others. That for the last two years past, Capt. Lamothe had wood upon the *locus in quo*, in several places; that he occupied the same by consent of the plaintiff.

Pork-packers used the same for shipping; Lamothe had his wood on the premises for nearly two years; the pork-packers had their barrels thereon from four to six weeks at a time; that Lamothe held the premises under the plaintiff; that the premises were used as a public landing, and by all persons; that the space between block 92 and the river, has been covered over with stone hauled by the State of Illinois.

The defendant produced George Smith, as a witness, who testified, that he had known the property in dispute for the last 30 years. That in 1832, most, if not all the land in dispute, was in the Mississippi river. There was then between 40 and 50 feet of land between the warehouse on block 92 and the river, at low stage of water ; at high stages of water it might have come to the warehouse. That in 1832, and since the witness had known the *locus in quo*, it had been used by the public as a steamboat landing, passage for drays, and other purposes, without interruption, until plaintiff commenced building. Buildings were commenced upon other lots in block 92, in 1835 and '36. That the occupation by the plaintiff, of the premises in question, by a building, would diminish the value of the opposite property in block 92. The landing in front of block 92, has been extended outwards, towards the river, by natural and artificial means, by the State and City.

At the date of the survey testified to by Spaulding, the title was shown to have been in Godfrey & Gilman, who had sold portions of block 92.

Lewis J. Clawson, testified, that he had known the property in dispute, since 1831; that it has continued to be a public highway. In the year 1831 the space between block 92 and the river, was from 30 to 50 feet. The first building on the west end of the block was erected in 1831; a building adjoining was put up in 1833, and a third in 1835; all the other buildings upon the block were erected in 1835 and 1836. That at this time, 8

lots of the 12 composing the block, are built upon. The levee in front of block 92, has been filled out into the river 40 or 50 feet, and raised 8 or 9 feet; part of which was done by the State of Illinois and part by the city of Alton; that it is covered with stones—a kind of rough McAdamizing; that it has been used for a street and landing. In 1832 all the ground in front of block 92 was called Front street.

In the year 1832 the land in front of block 92 was not over 35 feet wide; it is now 60 or 80 feet wide—about 40 feet has been filled out. Godfrey & Gillman occupied a building on block 92, from 1831 to 1841; they were forwarding, commission, and selling merchants. They filled out a part of this landing in front of their store, for a steamboat landing; they threw out the spawls from their building in 1833, and that was the most convenient place to put them; and they used the same until they quit business in 1841, and so did others.

Samuel Avis, testified, that he had been acquainted with the *locus in quo* for 19 years, and during all that time it has been occupied as public property, for road and hauling; block 92 near the river, when witness first knew it, except near the west end, a rock run out into deep water; this rock is now under the landing. In the year 1837, a line 40 feet south of block 92, and running parallel thereto, would have been in the river. In the year 1837, the buildings were 30 feet from the river; they are now 70 feet therefrom; in 1832, they were 20, perhaps 30, feet distant. Godfrey & Gilman filled out a part of this land when building; they were merchants from 1832 until 1841, when they quit business; they used the landing in common with others; other persons building between Godfrey & Gilman, filled in, in front of their lots; a 66 foot road would in 1837 have taken 20 or 30 feet from the buildings.

William Hayden, testified, that he had known the premises in dispute, 18 years, occupied and used by every body as a public landing. When Lamothe was ordered off by the defendant, he asked permission of the city to continue his wood thereon. In the years 1836 and 1837, a line 40 feet south of block 92, would have been in the river; and at an ordinary stage of water, boats would have landed in the 40 foot street. Godfrey & Gilman built a bulk-head of stone, on a part of the premises.

The tax books of the county of Madison, for the years 1844,

*State Street, 80 Feet*

*N. 5° E.*

*131.*

*Short Street 60 Feet Wide*

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |

*92*

*S. 84¼° E*

*S. 78¼° E*

*Street 40 Feet*

*N. 13¼° E*

35½ · | 25½ | 22½ | 21½ | 21½ | 21½ | 21½ | 25½ | 25½ | 25½ | 25½ | 36½
20½ · | 23½ | 23½ | 23½ | 23½ | 23½ | 26½ | 25½ | 25½ | 25½ | 25½ | 36½

36½ | 24½ | 25½ | 25½

*Reserved by Godfrey and Gilman*

*MISSISSIPPI* → *RIVER.*

'45, '46, '47, and '48, were produced in evidence to show that said land had not been listed by plaintiff when called upon, as above, for a list of his property.

D. A. Spaulding, testified, that he had been acquainted with the premises for 30 years. In 1832, Alton was extended and laid off by witness, at the request of the owners, Russell, Gilman, Godfrey, and Hayden. Russell came after witness, and he, and the others in interest, agreed on the plan, and witness made the survey. Front street was located as far up as the Penitentiary. The front line of Godfrey & Gilman's warehouse, was to be on the north line of Front street; and we measured out to see how far it was to low water. Front street was to extend into the river. It was laid out for a public highway and landing. The matter was talked over. It was anticipated and understood, that Front street was to be extended out into the river. Gilman made the block 92 as near to the river as he could. Witness thought he was very anxious to crowd out into the river, and make the purchasers of lots fill up. Opposite to block 92, and between that block and the river, the ground has been used as a public landing ever since I have known it. The space between the north line of Front street and the river was in some places 20, and in some 30 feet. It would not average more than 25 feet. A street along there 66 feet wide from the river, in 1833, would extend some 40 feet into the lots, as they now exist. In the fall of 1832, the county road on this ground, a little time after this survey, was to run where the points were fixed, on the corner of lot 1, in block 92, and extend 50 feet to the river.

Joseph Burnap, testified, that he made the plot of Godfrey and Gilman's additions to the town of Alton, in the fall of 1836, embracing block 92, and at the time he made the survey, most of the buildings now on block 92 were erected. (*See plat of block* 92.)

L. J. Clawson, testified, that the City put on rock on premises, but he did not know who paid for it.

Verdict for the defendant upon the 1st, 2d, 3d, 4th, and 5th pleas. Thereupon defendant waived a verdict upon the 3d plea of *liberum tenementum*, and leave was given to the defendant by the Court to withdraw said plea. Plaintiff moved the Court for a new trial.

The cause was heard before Underwood, Judge, and a jury,

at August term, 1850, when a judgment was rendered for the defendant. Godfrey brings the case to this Court by writ of error.

BILLINGS & PARSONS and WILLIAM MARTIN, for Pltff in error.

1. The Court had no power to order a waiver of the verdict on the issue of *liberum tenementum.* 10 Bacon's Abridgment, Title Verdict, 362; 1 H. Blackstone, 79; 10 N. Hampshire, 304; 19 Wend., 628.

2. The possession or enjoyment on which a prescriptive title is founded, must be open, peaceable, continued, and unequivocal; it must also be adverse, of a nature to indicate that it was claimed as a right, and not from indulgence, or of any compact short of a grant. 2 Greenleaf's Cruise, 222 and note 1; 14 Mass., 49; 2 McCord, 445; 5 Condsd. Rep., 243 and note; 10 Mass., 151, 407; 4 Pick., 222; 9 Pick., 251; 5 Pick., 131; 11 Pick., 217; Angel on Limitations, 442.

3. A dedication in specific terms, on the recorded plat of a town, is not to be affected by parol proof of the intention of the donors. Brown *v.* Manning, 6 Ohio, 129; Cincinnati *v.* White, 6 Peters, 441; Dummer *v.* The Board of Selectmen, &c., 1 Spencer, 86; 8 B. Munroe, 252.

It is contended in this case that the evidence was not sufficient to show that Godfrey & Gilman *intended* to dedicate the land in controversy to the public. There are two modes of establishing by evidence the fact of dedication; one by length of public use, the other, by some *unequivocal* act—showing that the owner *intended* to appropriate the land to public use. 6 Peters, 504; 5 Taunton, 127; 7 Com. Law Rep., 158; 11 Metcalf, 241; 24 Pick., 71, 80; 3 Metcalf, 239.

Where the width of a street, marked by right lines, is given in a town plat, surplus land, between the street and the low water mark of a river, is not thereby dedicated to the use of the town. McLaughlin *v.* Stevens, 18 Ohio, 94; Barclay *et al. v.* Howell's Lessee, 6 Peters, 498; Conner *v.* The President and Trustees of New Albany, 1 Blackf., 43.

D. J. BAKER, J. GILLESPIE, and E. KEATING, for Deft in error.

The verdict was regular, and the Court properly allowed the

defendant to waive the verdict on the plea of *liberum tenementum.*
10 Bacon's Ab., 328, 349, 330; Sutton *v.* Dana, 1 Metcalf, 382;
French *v.* Hanchett, 12 Pick., 15; 19 Pick., 25; Jones *v.* Kennedy, 11 Pick., 125.

CATON, J.    We shall rest our decision, upon the single
claim of dedication, arising from the survey made by Spaulding,
without investigating the various other claims insisted upon in
behalf of the City.

Spaulding swears, that in 1832, Alton was extended and laid
off by him at the request of the several owners, who agreed upon
the plan, and that he made the survey.    He surveyed block 92,
and Front street.    He says, "Front street was to extend into
the river.    It was laid out as a public highway, and landing.
The matter was talked over."    Front street extended from block
ninety-two, down to and into the river.    No pretence seems to
have been made at that time, nor until several years after, of any
intention by Godfrey and Gilman to reserve to themselves, any
thing south of Front street.    They went on and made sales in
block ninety-two, in reference to, and recognizing that street,
and improvements were also made upon that block.    This clearly
amounted to a dedication of the space, thus made common for a
street and public landing, according to the plan agreed upon
among the proprietors, and the survey of Spaulding.    The street
and landing were laid off, and the owners of the soil proclaimed
the purposes to which it should be devoted.    All the other pro-
prietors of the town, with whom the plan was agreed upon, as·
well as those who purchased with reference to that plan and.
survey, paid a consideration for the dedication, and had a direct.
interest in insisting upon its perpetuity.    It is true, that it does·
not appear that any map was made of this survey, but that was
not essential to the validity of the dedication.    The statute of
frauds does not apply to the dedication of ground to the public,.
Such a dedication may be made by grant, or other written instru-
ment, or it may be evidenced by acts and declarations, without
writing.    No particular form is required to the validity of a dedi-
cation.    It is purely a question of intention.    A dedication may
be made by a survey and plat alone, without any declaration,.
either oral or on the plat, when it is evident from the face of the
plat, that it was the intention of the proprietor, to set apart cer-

tain grounds for the use of the public.   An examination of the
cases referred to on the argument, will show, that dedications
have been established in every conceivable way, by which the
intention of the dedicator could be evinced.   And great import-
ance is frequently attached to the fact, that investments or
improvements have been made, either by individuals or the
public, in reference to a dedication, and with the knowledge of
the proprietor.

A dedication must be understood and construed, with refer-
ence to the objects and purposes for which it was made.   This
is peculiarly the case with a public landing upon a navigable
water course.   That is necessarily *inseparable* from the margin
of the water, however that may fluctuate.   Without this, its
enjoyment would be precarious, and often destroyed.   All accre-
tions to a public landing, must necessarily attach to and form a
part of it, otherwise we should have the novel spectacle, of a
*public landing*, separated from the water, as is in fact attempted
in this case.   Such a proposition does not require refutation.

The only question that arises here is, was it the intention to
make this a public landing?   That was the declared intention of
the owners of the land, and their agreement with the other pro-
prietors.   But in the absence of any such expression, I should
be equally clear, from the manner in which the ground was laid
off, that it was for a public landing, as well as for a street.   On
the north side, it was bounded by block ninety-two, and on the
south by the river, varying in width according to the meander-
ings of the stream.   This stream was a public highway, in con-
tact with this, another easement is granted and the very location
of it, shows that it was designed for the purpose of lading and
unlading freight and landing passengers from the water commu-
nication, as much as the laying out of an interior street, would
show that it was designed for the use of travellers by land.   The
street and landing thus laid off, was subsequently—as it had
been previously—used and enjoyed by the public, and was
improved and extended into the river, both by natural accretions,
and by artificial means, and no pretence of any claim appears to
have been set up on the part of any one, adverse to the full
enjoyment of the public landing, until 1836, when the addition
of Godfrey & Gilman to the town of Alton was platted by Bur-
nap.   By the marks upon this plat, we see for the first time, a

claim set up to a portion of the bed of the stream, in front of this landing. The landing has since been filled up and extended into the river, so that it now covers the place designated on that plat as claimed by the proprietors of that addition. For this claim we can see no pretence whatever. As we have already seen, long previous to this time, the entire space between block ninety-two and the river, had been dedicated for a street and for a public landing, and to separate such a dedication from the river would destroy it.

But even if there had not been any previous dedication, we think the same construction should be given to the plat made in 1836. At that time, Front street, as laid out on that plat, covered the margin of the river and extended twenty or thirty feet into the stream, and it was beyond this, that a claim was indicated, of the premises in question.

When an easement is granted to the public, upon the margin of a navigable stream, the *right to use* and treat it as a landing is undoubted. Having dedicated the banks of the river, this united the two easements, each of which was essential to the full enjoyment of the other, they had no interest in the bed of the stream which they could reserve, to the prejudice of the enjoyment of the public easement over it.

Exceptions were taken to the instructions. These are very numerous and some of them very long, and not very perspicuous, and may not have tended much to the enlightenment of the jury. It would be tedious and unprofitable to review them separately. Although some verbal alteration might well have been made to one or two of them, still on the whole, we think the law was not improperly laid down to the jury.

A verdict was returned for the defendant upon all the pleas, after which the plea of *liberum tenementum*, was allowed to be withdrawn, and this is assigned for error. In this there was nothing improper, nor was there anything prejudicial to the rights of the plaintiff. That plea may not have been sustained by the evidence, yet the defendant was entitled to a judgment, if the verdict upon any one of the pleas could be sustained. Because the verdict upon one plea was erroneous, it would not vitiate the finding upon the others.

The judgment of the Circuit Court is affirmed, with costs.

*Judgment affirmed.*