# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

## JANUARY TERM, 1868.

---

### THE VILLAGE OF MANKATO

*v.*

### J. A. WILLARD, et al.

*Held.* That there may be a common law dedication of land for a public landing, or levee.

Such dedication does not operate as a grant, but as an estoppel *in pais* of the owner of the fee from asserting a right of possession inconsistent with the uses and purposes for which the dedication was made.

The law applicable to the dedication of highways applies with equal force to the dedication of public landings, and the principle, so far as respects the right of the owner to disturb the use, rests on the same ground in both cases.

A party having no title to or interest in lands may by his deed estop himself from questioning the validity of his title, or denying that he had authority to convey the fee, or devote any interest or estate to public use at the time of the sale or dedication.

Section 4, chapter 42, of the General Statutes, does not require the public to file a statement with the trustee for lands dedicated to public use.

Where land is devoted to public use by a common law dedication thereof, the public, not being entitled to the fee, cannot require a party claim-

ing the fee without disturbing or questioning the public easement, either to establish, or defend his title; but where a claimant threatens to invade the public rights, at a time and under circumstances unfavorable to their defense, a city, or village, representing the people, may maintain an action to have the rights of the public and the adverse claim determined.

The plaintiff, claiming to be the " owner in fee simple, and in trust for the public, for their use, as a levee and public landing," of certain premises, brought this action in the District Court for Blue Earth County, to cancel certain deeds alleged to be a cloud upon plaintiff's title. The cause was tried before the Court without a jury. Both parties appeal from the judgment rendered. No exceptions were taken to the rulings of the Court upon the trial. The pleadings, the findings of the Court below, and the judgment appealed from, so far as necessary to an understanding of the points decided, appear in the opinion of the Court.

FRANKLIN H. WAITE, for Plaintiff.

WILLARD & BARNEY, and JAS. GILFILLAN, for Defendants.

*By the Court*—WILSON, Ch. J.—The premises involved in this litigation are situated in the Village of Mankato, on the bank of the Minnesota River, and are claimed and used as a levee or public landing. The lands embraced in the site of the Village were purchased in May, 1858, from the Government of the United States by the Hon. Charles E. Flandrau, then a Judge of the Supreme Court of the Territory of Minnesota, in trust, for the several use and benefit of the occupants thereof, under the Act of Congress entitled " An Act for the relief of citizens of Towns upon lands of the United States, under certain circumstances," approved May 23, 1854.

It is, among other things, alleged in the complaint, that the plaintiff was incorporated a Village in March, 1865, and has been since May, 1865, the owner in fee simple (in trust for

the public for its use as a levee and public landing) of the *locus in quo*, which is and has been since April, 1852, used as a public landing, and which has been dedicated to the public for the use aforesaid by the proprietors thereof; that in December, 1864, the Hon. Lewis Branson, successor of Hon. Charles E. Flandrau, as Trustee, conveyed said premises to the defendants, who claimed, under one Wardlaw, who claimed to be entitled thereto by reason of his occupancy under the town site act aforesaid; that the deed to the defendants was recorded in the office of the Register of Deeds of Blue Earth County, in which is the Village of Mankato, in February, 1866; that prior to the record of the deed, plaintiff never heard of any adverse claim to the said piece of land; that plaintiff is informed and believes that defendants' claim title thereto, adverse to the title of the plaintiff, and to the occupancy and use by the public; "that the deeds were executed in fraud of the rights of this plaintiff and of the public; that the defendants intend to use the said deeds for their own benefit, and to the prejudice of this plaintiff, and of the public, who have a right to use the said river and levee and public landing; that each of the said deeds is a cloud upon the title of the plaintiff to the said levee and public landing, and also upon the interest of the public to use the same, and the part of the river adjacent thereto, and cannot be removed from the record of the office of the Register of Deeds aforesaid; and also that such deeds may subject this plaintiff to farther litigation, while the facts will be no longer capable of complete proof. Wherefore the plaintiff prays that the defendants be adjudged to produce the said deed, and deliver the same up to be canceled, and also for such other relief as the Court may deem just."

The defendants in their answer deny that the plaintiff is owner in fee of the premises, or entitled to any estate, inter-

est or easement therein, or that either the plaintiff or the public has or had any right to the use thereof, or to an easement therein, or that either has used said premises or ever had possession thereof for a landing or levee, or that said landing or levee (so called) was ever dedicated to public use. And they claim title in themselves (under Wardlaw) in fee simple, free from any easement or right of any kind in the public.

The defendants also allege that Wardlaw, under whom they claim, settled upon and occupied Lot 1, in Sec. 7, T. 108, R. 26, which includes the premises in question; that he was entitled by virtue of his occupancy to a deed of said lot from the trustee aforesaid; that he filed with the trustee a statement in writing, claiming such deed, within the time prescribed by law for that purpose; that no other person applied for a deed of the land in question, and that the trustee made a deed to the defendants—Wardlaw's assignees—in pursuance of said application.

The findings of fact of the Judge below, who tried the case without a jury, are very full. There do not appear to have been any exceptions taken to the rulings of the Court.

From the findings it appears that Wardlaw applied for Lot one; that the defendants succeeded to his claim or right thereto, and that in pursuance of his application, a deed was made to them, of these premises, and that no other person applied for a deed of said lot, or any part thereof.

It is also found that the tract of land in question was dedicated to the public use as a landing, and that Wardlaw was never an occupant of the town site or any part thereof, and therefore was not entitled to a deed from the trustee of any part of the land embraced therein, and "that none of the parties to said instruments or conveyances (the defendants and those under whom they claim) has ever made any claim,

or did any act hostile to the public use, of the lands in question, except it be the making, delivering and recording of said instruments and conveyances (from the defendants' grantors and the trustee to the defendants), and the claim set up by the defendants in their answer to this suit."

The Court below decided that the plaintiff has not such title or interest in the premises, as is necessary to sustain an action to remove a cloud from the title, but that the action is rather one "to declare, establish, and maintain a public easement, without regard to the settlement of any controversy as to the legal title." The Court also held that the defendants, claiming under Wardlaw, stand in no better condition than he, and are not, and never were, entitled to a conveyance of the said premises, or any part thereof, from the trustee, and ordered "that the defendants, their agents and attorneys, and all persons claiming any interest in, or right to said premises, through them, or either of them, do forever refrain from obstructing, or in any wise interfering with the free and unrestrained use by the public of the premises in question, as a public levee or landing." Judgment was entered in accordance with this order, from which both parties appealed; the defendants, on the ground that the plaintiff is not entitled to the relief granted, or any relief in the premises; the plaintiff, on the ground that the Court refused to order the deed and the record thereof to be cancelled.

The defendants argue that (1) there can not be a common law dedication of lands for a public landing or levee; (2) the claimants, before their right to a deed from the trustee was established under the statute, could not dedicate the land, or any part thereof, to public use; (3) a deed from the trustee to the defendants, no other claimant having filed a statement or claim to the land, is conclusive as to the title, and all rights or claims thereto; (4) admitting that there was a com-

mon law dedication of the premises in question, the plaintiff can not maintain this action.

The decision of these questions must depend very much on the view which we take of the nature and effect of a common law dedication. It does not appear that there was in this case a statutory dedication, and we will not, therefore, discuss its force or effect. It was held in *Schurmier vs. St. Paul & Pacific R. R. Co.*, 10 *Minn.*, 83, that a statutory dedication did not pass the fee, but the correctness of this view being doubted, a re-argument of the question was ordered in a case now pending in this Court. In *Wilder vs. St. Paul*, 12 *Minn.*, 201, we held that a common law dedication does not operate as a grant, but as an estoppel *in pais* of the owner of the servient estate from asserting a right of possession inconsistent with the uses and purposes for which the dedication was made. This proposition is taken substantially, if not literally, from the authorities cited in the opinion, but as it is important, and perhaps decisive in this case, we refer more particularly to the authorities supporting it, and the principle on which it is based. The Supreme Court of the United States says, (in *City of Cincinnati vs. White's Lessees*, 6 *Pet.*, 438, in which the question of the dedication of a public park is discussed,) "And after being thus set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an estoppel *in pais*, which precludes the original owner from revoking such dedication.

It is a violation of good faith to the public, and to those who have acquired private property with a view to the enjoyment of the use thus publicly granted.

The case of *Jarvis vs. Dean*, 3 *Bing.* 447, shows that rights of this description do not rest upon the length of possession. * *

The point therefore upon which the establishment of the public street rested, was whether it had been used by the public, as such, with the assent of the owner of the soil, not whether such use had been for a length of time which would give the right by force of the possession; nor whether a grant might be presumed, but whether it had been used with the assent of the owner of the land; necessarily implying that the mere naked fee of the land remained in the owner of the soil, but that it became a public street by his permission to have it used as such." In *Hunter vs. the Trustees of Sandy Hill*, 6 *Hill* 411, the Supreme Court of New York says: "Dedication, as the term is used in reference to this subject, is the act of devoting or giving property for some proper object, and in such manner as to conclude the owner. The law which governs such cases is anomalous. Under it, rights are parted with, and acquired in modes, and by means, unusual and peculiar. Ordinarily, some conveyance or written instrument is required to transmit a right to real property; but the law applicable to dedications is different. A dedication may be made without writing; by act *in pais*, as well as by deed. It is not at all necessary that the owner should part with the title which he has; for dedication has respect to the possession, and not the permanent estate. Its effect is not to deprive a party of title to his land, but to estop him, while the dedication continues in force, from asserting that right of exclusive possession and enjoyment which the owner of property ordinarily has. (*Cincinnati vs. Lessee of White*, 6 *Pet. Rept.* 431, 438.) The principle upon which the estoppel rests, is that it would be dishonest, immoral or indecent, and in some instances even sacrilegious, to reclaim at pleasure property which has been solemnly devoted to the use of the public, or in furtherance of some charitable or pious object. The law, therefore, will not permit any one thus to break

his own plighted faith; to disappoint honest expectations thus excited, and upon which reliance has been placed. The principle is one of sound morals, and of most obvious equity, and is in the strictest sense a part of the law of the land. It is known in all Courts, and may as well be enforced at law as in equity."

In *Childs vs. Chappell*, 5 *Seld.* 256, the Court of Appeals of said State, said: "It (an express dedication) operates immediately in the nature of an estoppel, upon the principle that to retract the promise implied by such conduct, and upon which the purchaser acted, would disappoint his just expectations."

Professor Greenleaf in his work on evidence, Vol. 2, Sec. 662, says: "Nor is it necessary that the dedication be made specifically, to a corporate body, capable of taking by grant; it may be to the general public, and limited only by the wants of the community. If accepted and used by the public in the manner intended, it works an estoppel *in pais*, precluding the owner and all claiming in his right from asserting any ownership inconsistent with such use. Nor is it necessary to prove who was the owner, nor that he was a private person; for a dedication may be presumed even against the sovereign; and in all cases, unless the state of the property was such that a dedication of the soil was impossible. The right of the public does not rest upon a grant by deed, nor upon a twenty years' possession, but upon the use of the land with the assent of the owner for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." The editor of *Smith's Leading Cases, in notes to Devaston vs. Payne*, says: "But in truth a public easement (so far forth as it is public) is not an interest, and a dedication to public use does not operate as a grant, but as an estoppel *in pais* of the

owner from resuming the exclusive use of his own property, or indeed any use which is inconsistent with the public use.*
* By regarding a dedication, not as transferring a right, but as operating to preclude the owner of the soil from the full enjoyment of his own rights of soil, we get rid of the necessity of inventing an anomalous interest, which passes without any legal ceremony, and vests without any legal owner." See also cases referred to in the last cited authority.

This view seems to be clearly sustained by the authorities, notwithstanding some unguarded expressions which look in a different direction. We think that it is the only view that can be sustained on principle. A grant, to be valid, must be to some person *in esse,* natural or artificial, who is named or definitely described, and who has capacity to take and hold by force of the grant, and our statute provides that " no estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties. A perpetual easement would seem to be such an interest in the land as comes within the purview of the statute, (3 *Kent's Com.,* 452; 1 *Wash. on Real Prop.* 27; *Wash. on easements,* 6;) and at common law, irrespective of the statute, an easement in land is grantable only by deed. *Brown on Statute of Frauds, Sec.* 232. In cases of common law dedication, these requirements are ordinarily, if not uniformly, wanting.

There is no writing—no grantee named—frequently none *in esse.* Both principle, and the adjudicated cases therefore, we think, sustain the position that a dedication does not operate as a grant, but as an estoppel *in pais* of the owner, from

asserting a right of possession inconsistent with the use to which he devoted the land.

We may here say that the theory on which the complaint was drawn—that the plaintiff has the fee—cannot be sustained; for a common law dedication does not pass the fee, and a statutory dedication, whatever its effect may be, is not proven.

We will now examine the legal positions taken by the defendants as above enunciated. The first—that there cannot be a common law dedication of land for a public levee—we think untenable. If, as we have attempted to show, such dedication operates merely by way of estoppel, it is not very apparent how its application can be limited by the use to which the property is devoted, or by the extent of the interest parted with by the land owner.

The binding force of the dedication of streets, highways, urban parks, walks, and pleasure grounds, is now too well settled to admit of question, and such dedications are not different in principle, we think, from a dedication for a public landing.

The argument to the contrary is, that in the latter case there is a more permanent appropriation and exclusive use of the land, than in the other cases referred to. This is ordinarily, but we think not always, true; but if it is admitted to be uniformly true, it does not justify the conclusion sought to be drawn from it.

The rights conferred by the dedication are not the same in tent, in all streets, or in all parks, but the nature of the right, and the principle on which it is sustained, are the same in each. The uses for which the dedication is made, determines merely the extent of the right parted with.

The Supreme Court of the United States in *City of Cincinnati vs. White's Lessee*, 6 *Pet.* 437, said, after laying down

the principle on which dedications are sustained, "If this is the doctrine of law applicable to highways, it must apply with equal force, and in all its parts, to all dedications of land to public uses, and it was so applied by this Court to a spring of water for public use. * * All public dedications must be considered with reference to the use for which they are made, and streets in a town or city may require a more enlarged right over the use of the land, in order to carry into effect the purposes intended, than may be necessary in an appropriation for a highway in the country; but the principle, so far as respects the right of the original owner to disturb the use, must rest on the same ground in both cases, and applies equally to the dedication of the common, as to the street." See also *Hunter vs. Trustees of Sandy Hill*, cited above. Appropriations of land for pious and charitable uses, have been considered exceptional in some of the adjudicated cases, but the Supreme Court of the United States, truly says (6 *Pet.* 435): "It is not perceived how any well grounded distinction can be made between such cases and the present. (A dedication of an open square in a city.) The principle, if well founded in the law, must have a general application to all appropriations and dedications for public use, where there is no grantee *in esse* to take the fee." * *

The extent of the right which the public may enjoy in some streets, is much greater than in others, and is not limited to the mere right of passage in any. The right to free and uninterrupted passage over a highway or street, is to be subordinated to the public convenience, and is subject to temporary partial obstructions in case of necessity.

In *Commonwealth vs. Passmore*, 1 *Serg. & R.* 219, Ch. J. Tilghman says: "It is true that necessity justifies actions that would otherwise be nuisances. It is true, also, that this necessity need not be *absolute;* it is enough that it is *reason-*

*able*. No man has a right to throw wood or stones into the street at his pleasure; but inasmuch as fuel is necessary, a man may throw wood into the street for the purpose of having it carried into the house, and it may be there a reasonable time. So, because building is necessary, stones, bricks, lime, sand and other materials may be placed in the street, provided it be done in the most convenient manner. On the same principle a merchant may have his goods placed in the street for the purpose of removing them to his store in a reasonable time." See, also, *Graves vs. Shattuck*, 35 *N. H. R.* 257; 2 *Smith's Leading Cases*, (6th Ed.) 229, and cases there cited.

A merchant may, when a reasonable necessity or convenience requires it, temporarily and partially obstruct the street by delivering and receiving his goods or wares. It is held that buildings may be moved through streets, when proper expedition is used, and when such streets are used as will least incommode the public. The adjudicated cases show that the dedication of urban parks and pleasure grounds is sustained on the same principle that sustains the dedication of streets and highways; yet in such parks, trees may be planted, houses for pleasure and ornament erected, and such other permanent improvements made and maintained as are necessary to fit and prepare the grounds for the uses intended. It has been held that land may be devoted for a public burying ground, for court-houses and churches, so as to conclude the one who makes the dedication.

It can not be admitted that in case of a public landing, there is a more permanent appropriation and exclusive use of the land, than in some of these cases. The use made of a public landing is the same made of a public street, the difference being in the extent of the use. Some streets in every city are used, at times, as a place of deposit for goods received

The Village of Mankato v. J. A. Willard et al.

or delivered, and it is difficult to draw a distinction, in princi-ple, between the delivery or reception of goods to or from a dray, and to or from a steamboat. The fact that the public landing is used more frequently and commonly for such pur-pose than a street, can make no more difference, in principle, than the fact that a street in a city is used more than an ordi-nary highway, or that one street is used more than another. A street can not legally be used as a place of temporary deposit for goods as frequently or continuously as a public landing, for the same reason that it would not be allowable to move buildings through the most busy streets of a city, while it might be allowable to move them through streets less frequented or used, or that an obstruction allowable this year might in the same street be a nuisance next, or that what might be admissible in a street by night might be inadmissible by day. The reason that underlies and explains this is, that public convenience and a reasonable necessity must control ; and what convenience and necessity require must be deter-mined in view of time, place and circumstances. No more can there legally be a permanent appropriation or exclusive use of a public landing than of a public street. Only a temporary partial obstruction of either is tolerated, and that as a matter of reasonable necessity or public convenience. And, in prin-ciple, it would be as " dishonest and immoral " to reclaim at pleasure property which had been solemnly devoted to the use of the public for the one purpose, as for the other, and the reclamation would in either case equally affect " public ac-commodation and private rights." The fee in each case re-mains in the dedicator. A landing may require a more en-larged right over the land than a street, or park, or the re-verse may be true, just as one street, one park, or one land-ing, may require a more enlarged use than another. But we think the authorities referred to and the reasons on which the

doctrine of dedication is sustained, lead to the conclusion that the law applicable to the dedication of highways must apply with equal force, and in all its parts, to dedications of public landings, and the principle, so far as respects the right of the original owner to disturb the use, must rest on the same ground in both cases. We are unable therefore to assent to all that is said in *Post vs. Pearsall*, cited and relied on by defendants' counsel, 20 *Wend.* 111; *ib.*, 425. See *Godfrey vs. City of Alton*, 12 *Ill.*, 29; *Alves vs. Town of Henderson*, 16 *B. Mon.*, 131; *Brown vs. Town of Portland*, 8 *B. Mon.*, 232; See also, *New Orleans vs. U. S.*, 10 *Pet.*, 662; *Barclay vs. Cotter et al.*, 6 *Pet.*, 498 ; *Gardner vs. Tindale*, 3 *Wisconsin Reps.*, 153; *Wash. on Easements* (2d *Ed.*), 484–5; *Ib.*, 186 ; *Coleridge vs. Larned*, 8 *Pick.*, 504.

Secondly. Can a claimant under the " Town-site Law," so called, before his right to a deed from the trustee is established, dedicate any part of the land to public use? A party can not give or grant, or conclusively devote to public use, what he has not; but whether his rights are inchoate or consummate, legal or equitable, or whether he has any right of any kind in or to the land, he may by his deed or dedication estop himself from afterward questioning the validity of his title, or his authority to convey the fee, or devote any interest or estate to public use at the time of such sale or dedication. It is undoubtedly true, as argued by defendants' counsel, that a person having no title cannot make an absolute dedication, or do anything which *eo instanti* gives the public an interest or easement in the land ; hence it is argued that a deed from the trustee to the defendants—no other claimant having filed a statement or claim to the land—is conclusive as to the title, and all right and claim thereto ; and that with the rights or claim of the dedicator, the claim of the public must fall. If this is the law, consequences are not to be

considered so far as to influence the decisions of the Courts; but it is not to be presumed, unless the language of the statute clearly leads to such conclusion, that the legislature intended to enact a law fraught with such evil consequences to the public, and the occupants of towns. Each lot owner, whether an original occupant, or his grantee, has an interest in every part of the land (within the limits of the town) dedicated to public use, inasmuch as it enhances the value of his property. His "lots and blocks," without streets, would be of little value. But not all nor many of the lot owners have such a legal interest in any portion of the public grounds, as to authorize them to apply for a deed thereof, from the trustee.

It is a rule of public policy, not to be departed from, unless the intention of the parties to the contrary is expressed in the most unmistakable language, that a deed of a lot, bounded by a street, conveys the fee to the centre of the street. It would seem that public policy, for the reasons governing the case referred to, would require the Courts to hold, unless the parties most clearly express their meaning to the contrary, that a deed of a lot fronting on a public landing, carries the fee not only to the centre of the landing, but to the middle of the stream or at least to the water. If this is so, an application to the trustee would seldom, if ever, be necessary on the part of any person, for any part of the land dedicated to public use; and perhaps this may account for the fact that our statute does not contemplate or require such application. But we do not place the decision of the case on this ground.

It is, we think, true, that before the right of the claimant to a deed from the trustee is established, the public have not a right to, or interest or estate in, the land for which a statement could legally be filed or a deed demanded.

Under a common law dedication, the public does not ac-

quire such an interest in the land as gives it a claim, or right to a deed from the dedicator, and of course not from the person holding in trust for him.

If a claim for such interest was a condition precedent to the enjoyment of the public easement, by whom it should it have been made, and for what interest ?

The village of Mankato was not organized until March, 1865. But our statute requiring a claim to be filed within a given time, clearly does not apply to such cases. It applies only to " a person, association, or company of persons," see *City of Winona vs. Huff*, 11 *Minn.* 135. But it is argued further, that admitting there was a common law dedication of the premises, for a public landing, the plaintiff cannot maintain this action.

It must be conceded that a recovery cannot be had on the theory of the complaint—that the fee is in the plaintiff—for a common law dedication does not pass the fee. Nor can the plaintiff have the deed to the defendants, or the record thereof, cancelled ; not having any claim or right to title itself, it cannot attack the title of the defendants, or call on them to establish or defend their title. The ownership of the fee by the defendants is not inconsistent with the public easement, and whether they rightfully hold the fee, is a question not important to the decision of this case, and which can only be settled at the suit of a party showing title in himself. Nor can this action be maintained on the ground of any actual interference with the public rights in the use of the land for the purpose for which it was dedicated, for the Court has found, that neither the defendants, or those under whom they claim, " have done any act hostile to the public use of the lands in question." If it can be maintained at all, it must be on the ground of a threatened invasion of the public rights, at a time and under circumstances, that may be unfavorable

The Village of Mankato v. J. A. Willard et al.

to their defence. The question as to the existence of a public easement over the land has been submitted to the Court, and decided in favor of the public, and the claim of the defendants, adverse to such easement, is admitted by the pleadings. The plaintiff claims that if relief is now denied, it may be compelled to litigate this question, at a time, and under circumstances when the facts will be no longer capable of complete proof. We think the apprehension not without foundation. The dedication, not being of record, can only be proved by those who witnessed the acts and matters *in pais*, constituting, or evidencing it. The facts may soon be forgotten, or the witnesses of the facts may remove from the State, or be removed by death. Important public and private interests being involved, unless this case is exceptional, the relief asked for should be granted; for the Courts interfere, ordinarily, under such circumstances, to prevent anticipated wrongs. Such cases fall within the general jurisdiction which the Courts exercise in favor of a party *quia timet*, when there is danger that the lapse of time may deprive him of his full means of defence. It is argued that this case is an exception to the general rule, because the lapse of time here, strengthens, rather than weakens, the right, and increases, rather than diminishes, the evidence of the right. This argument has its foundation, in the fact, that the use of the land by the public, with the assent of the owner, is evidence of an intention on his part to devote it to public use; but in determining its force, we must bear in mind that a dedication rests on the intention, or clear assent of the owner, and that the defendants in this suit have in the most emphatic and solemn manner denied a dedication, or any intention to dedicate. These declarations, and denials, go far toward destroying the force of the evidence, which the user

would otherwise be, of a dedication. · They negative the presumption, which the undisputed public use raises, of an *intention* to dedicate. The argument, therefore, is of little weight, if not entirely valueless, in this case. The views above expressed cover also the grounds on which the plaintiff appealed.

Judgment affirmed.