(*Superior Court of Cook County. In Chancery.*)

### A. Montgomery Ward

#### vs.

### Field Museum of Natural History, a corporation, and South Park Commissioners, a municipal corporation.

1. EQUITY—DEMURRER TO CROSS BILL—EXAMINATION OF OTHER PLEADINGS. Upon a demurrer to a cross-bill, it is competent to refer to the answer filed with the cross-bill, where the cross-bill refers to the answer to determine what are the allegations made by the defendant upon which he bases his relief.
2. EQUITY—DEMURRER TO CROSS-BILL TO REMOVE CLOUD ON TITLE CONSISTING OF EASEMENT SET UP IN BILL. A demurrer to a cross-bill will be overruled which seeks to remove a cloud on

title consisting of an easement in cross-complainant's land which complainant by his bill seeks to establish, as on demurrer to a cross-bill the facts therein stated must be taken as true.

3. COURTS—JUDICIAL DECISIONS—AS TO WHAT IS, THE DECREE OR THE OPINION OF THE COURT. If a point presented for decision to the supreme court is left open and undecided in and by its decree, then that point is left open notwithstanding the supreme court in its opinion made use of language which if given literal interpretation would foreclose the question.

4. PUBLIC PARKS—WHAT ARE. The primary idea of a park is an ornamental and adorned tract of ground to serve as a place of free public resort.

5. PARKS AND COMMONS—DEDICATION OF LAND FOR—INCONSISTENCY. Land cannot be dedicated and accepted as a park and at the same time be "a common to remain forever open, clear and free of any buildings or other obstructions whatever." A park and an unoccupied common are two different and inconsistent things.

6. INJUNCTIONS—EASEMENTS—ISSUANCE OF IN DOUBTFUL CASE—BALANCING OF CONVENIENCES. When the easement which complainant seeks to enforce is of doubtful validity and its enforcement will entail great loss to the defendant and hardship to the public and its non-enforcement will create no irreparable injury or the injury is slight to the complainant the latter should be denied the injunction and left to his remedy at law.

7. COURTS—JURISDICTION OF SUPERIOR COURT TO PROHIBIT ENFORCEMENT OF DECREES ENTERED PREVIOUSLY IN SUPERIOR OR CIRCUIT COURT. The superior court has no jurisdiction to prohibit a complainant from moving in any way he may be advised to enforce decrees which may have been previously entered in the circuit and superior courts.

8. EQUITY—JURISDICTION TO DETERMINE VALIDITY OF A LAW AS TO RIGHT OF PARTY TO CONDEMN—HOW VALIDITY TO BE DETERMINED. A court of equity has no jurisdiction in the present equity proceeding to determine the validity of a law in respect to the right of one of the parties to condemn the rights of the others. The scope, effect and validity of the law will be directly involved in any condemnation proceeding that may be instituted and all matters in relation thereto must be determined by the court in the progress of such litigation if any shall be instituted.

Demurrer to cross-bill. Heard before Judge George Dupuy. Gen. No. 259,201. The facts are stated in the opinion.

DUPUY, J.:—

The matter to be here determined is a demurrer, general and special, to the cross-bill of complainant. .I was somewhat in doubt whether, in undertaking to determine the matter, I should be confined solely and entirely to the allegations of the cross-bill, or whether it would be permissible to examine the other pleadings so often referred to during the course of the argument. The rule in such case is set forth in the opinion of the supreme court in the case of *Thielman v. Carr*, 75 Ill. 385, 389, where it is said:

"After a defendant has fully answered the bill, no objection is perceived to his then stating new matter entitling him to such relief, as he would in the cross-bill, and ending with an appropriate prayer for relief. We can see no particular merit to be imparted to such pleadings by having them detached and on separate papers. We can see no particular objection even in form to such a course."

I understand from this authority that, upon demurrer to a cross-bill, it is competent to refer to the answer filed with the cross-bill, where the cross-bill refers to the answer, to determine what are the allegations made by the defendant, upon which he bases his claim for relief.

The special points of demurrer, as set forth at considerable length in paragraphs 1 to 12 of the pleading filed, may be roughly stated as follows:

I. That the cross-bill seeks no relief that the court could not award under the original bill and answer, and hence is unnecessary (paragraphs 1 to 6 inclusive).

II. That the same matters here in dispute were judicially determined by the decree entered in the case of *Ward v. City, infra* (paragraphs 7 and 9).

III. That the same matters here in controversy were again judicially determined and finally adjudicated in the case of *Ward v. Bliss*, 198 Ill. 104 (paragraphs 8 and 9).

IV. That the court in this proceeding has no jurisdiction to enjoin cross-complainants from proceeding to have cross-defendants punished as for contempt for violation of the aforesaid former decrees (paragraph 10).

V. That this court has no jurisdiction to determine the effect or validity of the act of March 14th, 1903, in respect to the right of condemnation under the power of eminent domain purported to be thereby conferred upon the cross complainant (paragraph 11).

VI. That said cross-bill is not germane to the subject matter of the original bill.

VII. In the general demurrer it is of course alleged the cross-bill shows no title to any relief.

  ❀  ❀  ❀  ❀  ❀  ❀  ❀  ❀

POINT I of the special demurrer must be overruled, and for this reason: The bill asserts the existence, in favor of the complainant, of a certain easement in the real estate in question. The cross-bill denies the existence of such easement, and further charges that such assertion of the complainant is a hindrance to its beneficial enjoyment of the land so held in trust, and that such assertion by the complainant is in effect at least a cloud upon its title.

If this easement claimed by the complainant is shown to exist, then of course the cross-complainant can have no relief. If it does not exist, then it must be equally clear that its assertion by the complainant is a hindrance to the enjoyment of cross-complainant's title.

Taking the charges contained in the cross-bill as true, as must be done for the purposes of this demurrer, I am of the opinion that this point of objection is not well founded.

I am of the opinion that Points II and III of demurrer are not well taken. These are the ones that were most strenuously insisted upon in argument and that present the greatest degree of difficulty. They present directly the question whether or not

(1) The matters here in controversy have been judicially disposed of and determined by the decrees in the two cases of *Ward v. City* and *Ward v. Bliss,* already referred to, and also

(2) Whether aside from the decrees in those cases, the cross-complainant shows any title to relief.

Upon the argument of these demurrers, the court's atten-

tion was called to the language of the supreme court in the
case of *Ward v. City,* 169 Ill. 392, 403, where it is said:

"That the land was so dedicated and accepted subject to
the restrictions imposed, of being forever unoccupied by
buildings, and that this restriction extended to and included
all the land between the west line of Michigan avenue and
the shore of the lake as it was when these lands were platted,
we entertain no doubt."

The attention of the court was also directed to other sim-
ilar expressions of the court in the two cases referred to, and
to the holding of that court that all of the present park area
is under the same restrictions as to buildings.

It was strenuously insisted upon the argument of these
demurrers, that the language of the supreme court before
referred to, settled the matters here involved, beyond all rea-
sonable dispute, and that it would amount to "judicial an-
archy" on the part of this court should it deny to the lan-
guage of that court literal application to the matters in con-
troversy here.   And here it may be remarked, that this court
has not the slightest disposition to suppose the supreme court
did not understand the decision it rendered, and still less
has this court any inclination to overrule or refuse to apply
the law of the decisions above referred to.

It was further claimed by demurrant's counsel that if there
were any conflict between the terms of the *decrees* in the
two cases referred to and the language of the supreme court
in considering the cases, that the language of the *opinion*
and not the language of the *decree* should govern this court
in the matter now being considered.

That contention is not in accord with the law.   On this
point Mr. Chief Justice Schofield, in the case of *Mayer v.
Erhardt,* 88 Ill. 452, at page 457, said:

"And here we may appropriately quote from the opinion
of Judge Marshall, in *Cohens v. Virginia,* 6 Wheaton, 399:
'It is a maxim not to be disregarded, that general expres-
sions, in every opinion, are to be taken in connection with
the case in which those expressions are used.   If they go be-
yond the case, they may be respected, but ought not to con-

trol the judgment in a subsequent point when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.' "

So here, "if the very point presented for decision" was not decided in and by the *decree* of the court in either of the former cases, then it is clear that the language of the supreme court, if any, not applicable to the points determined by the *decree*, "ought not to control;" and, further applying the above doctrine to the matter here presented, if that *decree* does not prohibit structures consistent with the use of this ground for a park, and if there are buildings that are *necessary* to a park, then the decree in the case referred to left the question here presented open and undetermined, notwithstanding the supreme court in its opinion made use of language which, if given literal application, would prohibit all buildings of every character.

That decree determined that both the city and other persons must

"Absolutely desist and refrain from placing or causing to be placed any building, material, lumber, timbers, dirt, rubbish, garbage, debris, street sweepings, or other material whatsoever, of any kind or nature, except * * * such structures * * * to be placed thereon for the purpose of making a public park of said premises."

But it is clear that that decree, by its own terms, did not prohibit the use of said real estate for park purposes. The language is:

"And said defendants are further hereby commanded to absolutely desist and refrain from using or occupying or permitting the use and occuption of the above described premises, for any purpose * * * not consistent with the use of said public ground, within the limits above mentioned, for a public park, solely and exclusively."

I am of the opinion that the respective rights of the parties

hereto, in or in any wise connected with said plat of ground, grow out of the original dedication and acceptance of the same, not limited or affected by any subsequent legislation. Whatever rights the abutting owners then acquired, became and are vested rights of which they cannot be deprived by any power on earth except by the exercise of the sovereign right of eminent domain. But this conclusion does not give any aid in determining what were the rights so acquired.

This piece of ground, so far as it was not covered by the waters of the lake, was shown on the plat of the Canal Trustees as "Michigan Avenue," and yet only a small strip of it is now or ever has been "Michigan Avenue," or any other avenue or highway. According to all the arguments made, all the decrees rendered, and according to all the long history of the title of this piece of public ground, extending over a period of nearly sixty years, it has now and, since its acceptance always has had, the character of a *public park*, and I am strongly inclined to the view that the rights of the parties hereto must be tested and finally determined by considering what is comprehended in the fact that it is a public park.

The Century Dictionary defines a park as:

"A piece of ground, usually of considerable extent, set apart and maintained for public use, and laid out in such a way as to afford pleasure to the eye as well as opportunity for open-air recreation."

Bouvier Law Dictionary defines a park to be

"A pleasure-ground in or near a city, set apart for the recreation of the public; a piece of ground enclosed for purposes of pleasure, exercise, amusement or ornament; a place for the resort of the public for recreation, air and light; a place open for everyone."

If the primary idea of a park is an ornamental and adorned tract of ground to serve as a place of free public resort, it cannot be denied that shelter for those who come is of primary importance; that buildings for public convenience are most essential, and that a park, both in the popular and in the legal sense of the term, cannot exist in the form of a va-

cant and unoccupied common devoid of all buildings of every character.

The views here expressed find support in the decision rendered by Judges Tuley, Horton and Burroughs, in the case of *Daggett v. City of Chicago*, 24 Legal News, 353,[1] where the same question now before this court, was there being considered, and in which decision, in speaking of the proposed Art Institute, then about to be erected on this same park, the court, among other things, said:

"Is such a building in a public park a use of such park for public purposes or for park purposes? There can be no doubt of the power of the legislature to declare that this Lake Park should be for the education as well as for the physical enjoyment and recreation of the masses of the people. Are not such institutions as art galleries usually found in public places or public parks? Is it reasonable to urge that it is a perversion of the uses of a public park that there should be a building upon it devoted to art purposes, filled with paintings and works of art to delight the souls of the people who visit such parks? Are parks necessarily to be confined to the works of nature? Certainly this is a contracted view of the objects of public parks, and should not prevail."

It is alleged in the cross-bill that certain buildings are a necessary part of a park:

"The administration, control, care and policing of a park renders it necessary that certain buildings be maintained for shelter, to provide for the public comfort, the safe keeping of implements and machinery, to supply light, power and sprinkling for trees and shrubbery." Also alleges that certain other buildings are convenient and usual in parks.

In these allegations the cross-bill alleges that which is common knowledge, and if the decree in the case of *Ward v. City*, only prohibited buildings "not consistent with the use of said public ground * * * for a public park solely and exclusively," then certainly the question here presented is in no wise foreclosed by that decree.

In addition to the foregoing, it should be noted that the

---

1 Reported in this volume.—Ed.

only part of the present park to which the prohibitions of
that decree relate, is the land "between the west line of
Michigan avenue and the west line of the right of way and
grounds of the Illinois Central Railroad Company," from
Park Row to Randolph street, and does not, in terms, in-
clude the lands east of the Illinois Central Railroad right of
way.

The same observations apply in general to the decree in
the *Bliss Case*. The question there was wholly a question of
the diversion of said ground from park purposes. The great
Armory building proposed to be erected was to be and re-
main the property of the state; the use and occupation of
the land to be used was to be in the state of Illinois, and to
be perpetual, and was to be for no purpose remotely consist-
ent with purposes of a public park. I hold that neither of
these cases have judicially determined the question which
these demurrers now present.

The question still remains, whether the original restrictions
under which this tract was placed when the lots on Michigan
avenue were sold, prohibit necessary park buildings. The
plat which was recorded only shows a part of the present
park tract as Michigan avenue. The unrecorded plat, upon
which it is alleged sales of lots were made, designates it as
"a common, to remain forever open, clear and free of any
buildings or other obstructions whatever."

This piece of ground was, as already stated, according to
all the arguments that have been made, and the pleadings
and decrees, accepted as a park. If it is a park, it is not
"Michigan Avenue" as shown on the recorded plat. If cer-
tain buildings are a necessary part of a park, as is alleged in
the cross-bill, then a park and an unoccupied common are
two different and inconsistent things. In that case it would
seem that the operation of these limitations should be re-
stricted to the prohibiting of only such buildings as are in-
consistent with the use of said real estate for park purposes;
otherwise, we should have the novel spectacle of the grant of
certain grounds for park purposes, and restrictions at the
same time imposed upon its use which would make it impos-

sible to utilize and maintain it as a park. It would be very much like the situation in the case of *Godfrey v. City of Alton*, 12 Ill. 29, cited on the argument, where it was said:

"All accretions to a public landing must necessarily attach to and form a part of it. Otherwise we should have the novel spectacle of a public landing separated from the water, as is in fact attempted in this case."

So, in this case, we should have the novel spectacle of a public park, without power on the part of the city to improve and maintain it as such.

These conclusions are somewhat enforced by the fact that a vast area of land, including very much the larger part of the park, has been reclaimed by the city at great expense, and that it was commonly understood that it was to become part of a park, not part of an unoccupied common. No steps have been taken by the complainant to prohibit the making of this addition to this public park.

I am, therefore, of the opinion that the restrictions alleged to exist in regard to the use of this park tract, should be construed consistently with the use of this ground as a public park if they can be so construed, and, if they do not admit of such construction but are to be given literal application as prohibiting all buildings, of every kind, including such as are necessary for park purposes, then they are either invalid, or at least, of such doubtful validity that the cross defendant should be left to his remedy for damages by an action at law.

"The issuing or continuing the writ of injunction is to some extent a matter of discretion of the court, and where the right infringed will create no irreparable injury or the injury is slight, that discretion is often exercised against the issuing of the writ of injunction. The court will balance the loss or inconvenience, and if the issuing of the writ will cause much loss or inconvenience to the defendants, and but slight to the complainant, it will refuse to use the court's strong arm to protect the complainant, but will leave him or her to an action of law." JJ. Tuley, Horton and Burroughs in the Daggett case.

The cross-defendant claimed an easement perpetual in its duration, not of light or air or passageway, but of unobstructed view across this entire park area, and for that purpose that the whole must be kept free from buildings. It is obvious that any ornamentation arising from diversifying the surface or planting trees will obstruct the view as effectually as would necessary park buildings. The claim of the cross-defendant is that the whole area of the park shall, according to the words appearing upon the original sales plat, perpetually remain "A common; to remain forever open, clear and free of any buildings or other obstructions, whatever."

The allowance of this claim to the extent insisted upon would render it impossible to improve this park as public parks are usually and ordinarily improved; would greatly detract from its availability as a place of public resort, which is one of the primary purposes of a park; and would, in a large measure, thwart the objects for which this land was reclaimed from the lake, thereby entailing upon the public perpetually the most serious embarrassment in its use of this park.

Thus balancing the interests of the parties, the claims of the complainant do not furnish to a court of chancery a reasonable or just basis for a perpetual injunction of the character prayed in the bill of complaint.

POINT IV of the demurrer is sustained. It seems quite clear to me that this court has no jurisdiction to prohibit the complainant from moving in any way he may be advised, to enforce the decrees that have heretofore been entered in the circuit court and in this court, respectively. Certainly this court has no semblance of jurisdiction in this proceeding to review any decree of the circuit court, and has no right to interfere with the complainant's attempting to enforce any such decree. Neither has this branch of this court any jurisdiction in this proceeding, or otherwise than by a bill of review or some other appropriate direct proceeding, to interfere with the operation of a decree heretofore entered

in this court. For it to attempt to do so, it seems to me would be subversive of all orderly procedure.

POINT V of the demurrer is also sustained. This court has no jurisdiction to determine the effect or validity of the act of March 14, 1903, in respect to the right of the cross-complainant to condemn, as under the power of eminent domain the rights of the complainant, if any. The scope, effect and validity of that law will be directly involved in any condemnation proceeding that may be instituted, and all matters in relation thereto must be determined by the court in the progress of such litigation, if any shall be instituted. No doubt the cross-complainant, by allegations in the cross-bill to which this part of the demurrer relates, intended that this court should determine whether or not this act conferred upon the park commissioners the power to make the contract alleged with the Field Museum, but the cross-defendant has not demurred to it on this ground, and consequently a decision on that point is not called for at this time.

POINT VI of the demurrer is overruled. The cross-bill is germane to the subject-matter of the original bill.

POINT VII of the demurrer, being a general demurrer, is overruled.