## Thomas Dwyer v. S. S. Hosea et als.

(Case No. 3909.)

1. PRACTICE.— That the ruling of the court upon the pleadings of the parties was erroneous is not sufficient cause for reversing the judgment if it is clear that no injury resulted therefrom. Hardy v. De Leon, 5 Tex., 233.

2. EVIDENCE.— Where the ownership of land is alleged in the petition for injunction under oath, and not denied in the answer, the production of the deeds under which the plaintiffs claim, with proof of possession to the time of the institution of the suit, is sufficient evidence of title to support the action. Abbott's Trial Evidence, 634.

3. INJUNCTION — CLOSING ALLEY IN CITY.— In 1844 the town of Brenham was laid off into blocks, lots, streets, alleys and squares. Lots were sold, and in the conveyances to the purchasers they were designated by their number and block only, as they appeared on

the map of the town. On September 23, 1871, an ordinance was passed by the city authorities of the city of Brenham, reciting that the alleys were a public nuisance, and petitioning the legislature to authorize their sale. An act was passed accordingly, and on March 27, 1872, the mayor sold a portion of one of the alleys and executed a deed therefor. The purchaser began closing the alley by building a wall across it, and the owners of the lots abutting on the alley sued out an injunction restraining him from closing the alley. *Held:*

(1) The owners of the lots on the alley, or their vendors, having purchased with reference to the map or plan of the city, acquired as appurtenant thereto a property in all such rights, easements, privileges and servitude, represented on such map as belonging to them, in the alley on which the lots abutted, which neither the legislature nor city authorities could take away, except in modes prescribed by law upon making compensation therefor.

(2) The conveyance from the city to a portion of the alley passed no title thereto, and the purchaser was properly restrained from closing it. Lamar Co. *v.* Clements, 49 Tex., 355; Warren *v.* Lyons City, 22 Iowa, 351; Haynes *v.* Thomas, 7 Ind., 38; Dillon on Mun. Corp., 630.

4. LIMITATION — THREE YEARS.— Adverse possession of an alley under a deed to the lots abutting on it will not support the plea of the statute of limitation of three years. City of Galveston *v.* Menard, 23 Tex., 409.

5. LIMITATION — FIVE YEARS.— A deed from a city to a portion of an alley will not pass title thereto, but adverse possession under such deed and payment of taxes for the required time will support the statute of limitation of five years.

APPEAL from Washington. Tried below before the Hon. E. B. Turner.

The facts are stated sufficiently in the opinion.

*Sayles & Bassett*, for appellant.

*Breedlove & Ewing*, for appellees.

QUINAN, J.— This suit was instituted by Elizabeth Penker and Hosea and wife to enjoin the defendant Thomas Dwyer from obstructing an alley between lots 47 and 50, and the lot 49, in the city of Brenham, and for the removal of obstructions therein.

The plaintiffs' petition alleges the ownership of the lot 47 in Adeline Hosea, on which, in 1875, she erected a brick

building worth $10,000, and the ownership of lot 50 in Elizabeth Penker, on which, in 1873 and 1875, she erected a brick building worth $8,000. They show the laying off of the town by commissioners in streets, alleys and squares in 1844, and exhibit a plat showing the location of their lots and the alley. The northern one-third of the lot No. 49 is owned by the defendant Dwyer. Between that and the lot 50 is an alley twelve feet wide, running from the public square of the city, between lots 50 and 47 on the north, and lots 46 and 49 on the south. They allege that the alley was a public way for all the citizens of the town; that it greatly enhanced the value of the lots 47 and 50; that they purchased and became the owners of the lots, and built houses and made improvements, in full faith that the alley, as designated upon the map, by reference to which they purchased, would remain forever open; that Dwyer has taken possession of the southern half of said alley, between lots 50 and 49, and has begun to erect a brick and stone building thereon; that he has obstructed and partly closed up the alley, so as to render it useless as a thoroughfare, and, if suffered to erect and finish his building, it will interfere with the free admission and circulation of light and air in the alley and depreciate the value of their property, and they have been damaged $2,000 already thereby.

Plaintiffs filed an amended petition, averring that the suit was instituted for themselves and on behalf of all other citizens of Brenham interested in the controversy. On this petition an injunction was granted.

The defendant excepted to the sufficiency of the petition because of the misjoinder of parties plaintiff, there being no privity or joint interest between them, etc.

The answer admits the laying off the town and sale of lots according to the plat, alleging that the purchasers acquired title to the center of streets and alleys on which those lots abutted; claiming that the alleys had been abandoned as public passways, and that the city authorities, declaring the alleys to be nuisances and not needed by the public, and being authorized thereto by the legislature, ad-

vertised the alleys for sale and sold them, the defendant's vendees purchasing the south half of the alley on which defendant's lot abutted and on which he is building. The defendant further pleads that the plaintiff, Mrs. Penker, and those under whom the defendant claims, had inclosed, in 1866, the alley with a high fence, and it had remained so till September, 1873, when it was destroyed by fire, after which Mrs. Penker again inclosed the north half of the alley in front of her lot.

Defendant also pleads the limitation of three years under his title. There is no general denial pleaded.

The cause was submitted to a jury, who returned a verdict for the plaintiffs; and judgment was rendered thereon perpetuating the injunction and directing the removal of the obstructions, etc.

The defendant moved for a new trial, which was refused, and this appeal was prosecuted.

The assignments of error are numerous. We shall notice specially those only which we consider material.

1. Whether the exceptions of the defendant to the plaintiffs' petition, because of the misjoinder of the plaintiffs, were properly overruled by the court, might perhaps present a question of some difficulty, were it necessary to determine it. If, as seems to be conceded by appellant's counsel. Mrs. Penker and Hosea and wife might well join in a suit to abate the public nuisance occasioned by the obstruction of the alley upon which their property abutted, yet it would seem they should not be permitted to sue jointly for damages suffered severally by them, by reason of the injury to their property not owned jointly. But, although claimed in the petition, no damages were recovered. The judgment of the court is such a judgment as, if the allegations of the petition, except as to damages, were sustained by the proofs, could rightfully be rendered in the case, and it is not perceived in what way the defendant has been or could have been injured by the improper joinder of the plaintiffs, if they were improperly joined. Though the misjoinder of parties plaintiff who have no joint interest in the subject-

matter may be taken advantage of on demurrer, yet the court will sometimes permit a decree when it appears that, notwithstanding the misjoinder, justice can be done to all parties. Story's Eq. Pl., 340. And in Raffity v. King, cited at page 573, it is said, there have been cases in which the court, with a view to special justice, has overcome the difficulty of a misjoinder of plaintiffs.

In our practice, that the ruling of the court, upon the pleadings of the parties, was erroneous, has never been held sufficient cause for reversing the judgment, if it be clear that no injury has resulted therefrom. Hardy v. De Leon, 5 Tex., 233.

The material questions involved in the case, as presented, are:

1. Did the plaintiffs show a right to the relief asked?

2. Has that right been lost or superior rights been acquired by defendant?

And the answer to these questions will be sufficient to determine the controversy, without necessarily reviewing in detail the many points raised and propositions made in the briefs of counsel, or following the order in which they have presented them for consideration.

1. The plaintiffs sufficiently proved title to the lot claimed by them.

Their ownership was alleged in the petition under oath, and not denied in the answer. They produced the deeds under which they claimed and their possession of the lots severally held by them from the year 1866 to the institution of the suit. And this was sufficient proof of title in this action. Abbott's Trial Evidence, 634.

2. It was proven that in 1844 the town of Brenham was laid off into blocks, lots, streets, alleys and squares, and a plan of the town was produced showing the designation of the block composed of the lots 49, 50, 46 and 47. There were streets sixty feet wide on east side of the block, and the lots were intersected by alleys crossing each other in the center of the block, twelve feet wide. The sale of the lots was made and conveyances executed to the purchasers by

the proprietors, designating them by their numbers on the plat of the town and not otherwise.

3. It was shown that at and before the institution of this suit the defendant Dwyer was engaged in erecting a solid wall of brick and stone upon and including the south half of the alley between the lots 49 and 50, part of a building being erected by him on the north one-third of lot 49, abutting on the alley; that the erection of the brick wall as contemplated by defendant would obstruct travel through the alleys, would interfere with the free passage of light and air; that closing the alleys would make the buildings less desirable to tenants, and would have a tendency to reduce the rents, the doors being useful for loading and unloading merchandise. As to Mrs. Penker's building the volume of light and air would be reduced one-half; as to the other building in a less degree, but somewhat.

4. It was shown that defendant had notice that his right to obstruct the alley would be contested by Hosea; that his vendors had informed him that they would not have sold but for the apprehension of litigation with Hosea, and they sold for a less price on that account. When Dwyer was spoken to after service of the injunction, he declared he expected it, and had as much money to spend in litigation over the alleys as the plaintiffs.

This proof, *prima facie*, made out the plaintiffs' case, and unless its force is overcome by the countervailing defense of Dwyer, fully warranted the judgment rendered.

"It has been repeatedly held," says Mr. Justice Moore in Lamar Co. *v.* Clements, 49 Tex., 355, " by this court as well by many others, that where the owner of land lays out and establishes a town, and makes and exhibits a map or plan of the town with streets and public squares, and sells the lots with reference to such plan, the purchasers acquire, as appurtenant to their lots, all such rights, privileges, easements and servitudes, represented by such map or plan to belong to them or to their owners; that the sale and conveyance of lots according to such map implies a grant or covenant for the benefit of the owners of the

lots; that the streets and other public places represented by the map shall never be appropriated by the owner to a use inconsistent with that represented by the map on faith of which the lots are sold, and especially so where the use to which the owner proposes converting them tends to lessen the value of the lots thus sold."

They acquire a vested interest therein that the legislature cannot destroy.   Warren *v.* Lyons City, 22 Iowa, 351; Haynes *v.* Thomas, 7 Ind., 38.

And it is settled that a party entitled to a right of way over a street will be protected in the enjoyment thereof by restraining the erection of obstructions thereon.   Individual owners of lots abutting on streets, and who have made valuable improvements thereon, have such rights and interests as will entitle them to an injunction to restrain the appropriation of the streets by others to their private use, or to any use inconsistent with the use to which they were dedicated.   Dillon on Mun. Corp., 630 and 633.

Defendant Dwyer's defense is:

1. That the alleys in Brenham have been abandoned as public passways, and especially the alley between lots 49 and 50, and that the plaintiff Penker had closed it up.

2. Title acquired by a sale made by the city.

4. Limitation of three years.

1. His proof established his title to the lot — to the northern one-third of the lot 49, abutting on the alley in question.

2. That the city authorities of Brenham, on 2d April, 1867, passed an ordinance proposing to sell the alleys to the proprietors of the adjoining lots, as the alleys "were not required or necessary."   And again on 23d September, 1871, another ordinance reciting that the alleys were a public nuisance and built upon, etc., and petitioning the legislature to authorize the sale of them.   An act of the legislature was passed accordingly, and on 27th March, 1872, the mayor quitclaimed to one Wm. Kieke for $——, the south half of the alley between lots 49 and 50.   This deed is recorded 30th April, 1875.   Kieke sold to Werner, and Werner to Dwyer.

3. There was evidence tending to show that plaintiffs had

free access, light and air to their lots and buildings by other streets and unobstructed alleys abutting on their lots.

4. That Elizabeth Penker's first husband, in 1866 or 1867, inclosed the north half of the alley with a high fence, and erected a pigeon house, privy, and dug a well in the alley, which structures remained until September, 1873, when they were destroyed by fire, and were renewed the following year and still remain.

4. That Hosea's tenants, without his consent, but with his knowledge, at various times, but not continuously, from 1869 to the time of the trial, had erected privies in and across the alleys, between lots 46 and 48, lot 46 being vacant.   He said he would make no objection if the city authorities would not.

5. That in 1866 or 1867 Dwyer's vendors had inclosed the south half of the alley with a close high plank fence meeting Mrs. Penker's, and so excluding the public until 28th September, 1873, when it was destroyed by fire.   The defendant's lot and the south half of the alley has remained vacant from that time until December, 1877.   Until after the fire in 1873, lot 46 was not built on.

These defenses, we are of opinion, will not avail to defeat the plaintiffs' recovery.

1. It may be conceded that the occupation by Mrs. Penker of the north half of the alley would estop her from objecting to the inclosure of the south half by Dwyer, and from claiming the right as against him to reopen it; but it could not deprive her of the right to object to the erection of such buildings thereon as would obstruct the free access of air and light to the buildings she had erected.   But surely there is nothing in the proof of any acts done by Hosea and wife which could be construed into an assent by them to the obstruction of the alley as a common passway, or to the erection of buildings thereon which would interfere with the full and free enjoyment of the benefits and advantages to be derived from it.

2. As we have seen, the plaintiffs, by the purchase of the lots with reference to the plan of the city, acquired, as appurtenant thereto, an easement in the alley upon which their

lots abutted.  They erected valuable buildings upon their lots on the faith that the alley should remain forever open. It was part of their contract of purchase.  And their property, so acquired, is as much protected by the constitution and laws as other property.  Neither the legislature nor the city authorities can take it from them except in modes prescribed by law, and upon making compensation therefor. The conveyances by the city authorities to Dwyer's vendors of the portion of the alley he claims passed no title.  The charter of the city conferred upon them the power, and it became their duty, to preserve the health and peace of the city, but it did not confer upon them the power, by suffering, in violation of this duty, the alleys to become a nuisance, to declare them so, and then sell them.  This would be a cheap mode of acquiring property.

3.  The plea of three years' limitation cannot be sustained.  Admit that the conveyances to the purchasers of the lots passed to them the title to the soil to the center of the alley upon which the lots abutted, it was subject to an easement in the alley for the public and the adjoining proprietors.  The right of way for the citizens over it, and of its free use and enjoyment by the owners of the adjoining lots, was as fully reserved as if expressed in so many words upon the face of the conveyance.  And it was in effect conveyed to the purchasers of the lots 47 and 50, abutting on the alley, who bought by the plan of the city.  So that the conveyance by the city to Dwyer's vendors, for their private and exclusive use, of the south half of the alley, was a conveyance of what they had already sold.  It was such a deed as, with adverse possession of five years, and the payment of taxes, might mature into a title to the alley; but certainly was not a link in an unbroken transfer chain of title under the sovereignty of the soil, to be prescribed under in three years.  City of Galveston v. Menard, 23 Tex., 409.

An objection is made to the form of the verdict rendered by the jury, that for the "plaintiff," in the singular, and it appears that the judge directed the clerk, as near as he could, to reproduce the word in the transcript for our inspec-

tion.   We think it badly spelt, but sufficiently clear that it means the "plaintiffs," and so the judge who received it adjudged it.   It was for him to determine the matter.

The views we have expressed sufficiently respond to the assignments of error.

We conclude that there is no error in the judgment and that it ought to be affirmed.

AFFIRMED.