WARREN v. THE MAYOR OF LYONS CITY.

22 351
105 262
22 351
119 269
22 351
135 74

1. Dedication; PUBLIC SQUARE: DIVERSION. When a portion of ground is dedicated by the original proprietors of a town or city, for the purpose of a "public square" therein, the municipal authorities cannot sell the same or divert it to uses and purposes foreign to those for which the dedication was made.

2. —— RIGHT OF GRANTOR. If a grant is made for a specific and limited purpose, the subject of the grant cannot be used for another and different one, and the grantor still retains such an interest therein as entitles him in a court of equity to enjoin such diversion and insist upon the execution of the trust as originally declared.

3. —— LEGISLATIVE POWER: UNCONSTITUTIONAL ACT. Nor is it within the legislative power to authorize a disposal of the subject granted; or its diversion to uses foreign to the dedication; and chapter 124 of the acts of 1864, in so far as it may authorize incorporated towns and cities to dispose of and convey "public squares, parks," etc., that have been dedicated therefor, is, as against the person who made the dedication, unconstitutional and void, as impairing the obligation of the contract.

*Appeal from Clinton District Court.*

SATURDAY, JUNE 15.

THE plaintiff states in his petition that, in the year 1840, himself, Elijah Buell, and Beal Randall, being the owners in fee of the land where the city of Lyons now is, laid it out as a town; made a plat of the same which was recorded; that on the said plat was a dedication by them of a "public square," which was marked as such on said map, at the intersection of Fifth and Main streets. That

it was intended by them that such "public square" should be forever held by said town, in trust, for public use, as such square, and for no other purpose, in accordance with the provisions of the fifth section of the act of January, 1839, under which said town was laid out, and the dedication made, and upon which they relied for the protection of the property to this use, at the time of making the dedication.

The petition further states that the lots adjoining the public square are valuable, and that improvements have been made upon some of them, with a view to its always being preserved as a public square, and open to public use; that plaintiff has lots adjoining the same of great value, but which would be of little value if cut off from said square and Main street, the principal street for business in Lyons; that said "public square" has remained open to public use from July 1840; that plaintiff has a large number of lots and other property in said city; that the annual tax paid by him to said city is as large as that paid by any other person.

That the city was incorporated in 1854, and the defendants, contriving to injure the plaintiff and the public, and make private gain out of said trust property, have procured the said "public square" to be subdivided into small lots, and offer to lease the same to private individuals for a term of years, to be built upon and used by them to the exclusion of the public and the plaintiff, thereby destroying the grant for public use, and diverting it to private uses, contrary to equity and good conscience, to the injury of plaintiff and the entire public; that he will be injured irreparably; that he is informed that defendants have contracted to lease some of said lots so subdivided, and intend at their next meeting to reduce said contracts to writing, and put private persons in possession of the said lots so carved out of the "public

square;" and he asks an injunction to prevent defendants from leasing or in any manner disposing of said square.

The defendants answer, not denying that they have subdivided said square into lots, nor that they have contracted to lease the same to private persons. They do deny that they intend *now, i. e.* at the time of filing their answer, to lease said lots, but say that they intend to sell and dispose of them absolutely, claiming that they have a right so to do, setting up an ordinance of said city council, which provides for the subdivision of said square, and authorizing the lots to be sold. Their authority so to do, the answer says, is conferred upon them by the act of April 5th, 1864, entitled " An act to enable incorporated towns and cities to acquire, hold, improve and dispose of land for public squares, parks, commons and cemeteries."

. To this answer the plaintiff demurred, assigning, aside from the general statutory cause, the following special causes :

1. That, as to the plaintiffs, the act of April 5, 1864, is inoperative and void.

2. That the said act is in conflict with section 21, article 1, of the Constitution of the State of Iowa, and with section 10, article 1, of the Constitution of the United States; that is, that it impairs the obligation of a contract.

The demurrer was sustained. Defendants excepted, and stood by their answer; and the court rendered a decree perpetually enjoining defendants from selling, conveying or in any manner disposing of any of said " public square," or depriving the public of the use thereof. From this decree defendants appeal.

*A. R. Cotton* and *Ellis Bros.* for the appellants.

*W. E. Leffingwell* for the appellee.

WRIGHT, J.—As will be seen by the statement, the power to subdivide, sell and dispose of the "public square" by the city authorities, as contemplated by the ordinance, is claimed under the act of 1864 (ch. 127, p. 162) entitled "An act to enable incorporated towns and cities to acquire, hold, improve and dispose of lands for public squares, parks, commons and cemeteries."

1. DEDICA-TION: public square: diversion.

The first section of this act declares that incorporated towns or cities may purchase lands within or without their corporate limits for the public, as squares, parks, etc. The second section is as follows: "Incorporated towns and cities within or without whose limits, lands have been or may be dedicated to the public for the uses mentioned in the preceding section of this act, shall have the entire control of the same, and shall have power in case such lands are deemed insufficient or unsuitable for the purpose for which they originally or may hereafter be granted, to dispose of and convey the same; and conveyances executed in accordance with this act shall be held to extingush all rights and claims of any such town or city to such land, existing prior to such conveyance.

The third and last section provides that enough of the land so conveyed shall be reserved for streets to accommodate adjoining property owners.

And, now, appellant's argument is, that, by the plat of 1840, plaintiff, as one of the original proprietors, surrendered all his title or interest in this public square, and now has no individual interest therein, and, hence, he cannot object to the sale. It is also insisted that, as an adjoining lot owner, he has no right of soil to the square which can be violated by the sale, and that this is especially so, when the "trustee (the city corporation by its council) and the *cestui que trust*, through the legislature, concur in consenting to the sale, reserving streets for the

accommodation of the adjoining lot owners ; " that as the trustor has no longer any individual interest in the property, the conveyance in the method proposed by the city would pass a complete title.

In this argument and the conclusion reached, we cannot concur.

Assume that the act in question refers to and confers the power to sell and convey squares and parks in towns and cities, laid off and dedicated by individuals, we feel constrained to hold that it is an attempt to divert the grant from the uses and purposes intended by the original proprietors, and is therefore void. For the use contemplated, they may have parted with the fee — the " proprietary right," but not for all purposes; and, therefore, if the city authorities, as the claimed trustee of the public, should undertake to make gain by the sale, or to authorize its use for anything else than a " public square," they violate the trust, and the original owners, in virtue of the terms of the grant, may demand that the trust shall be executed in good faith, and restrain any such proposed violation of the terms upon which the grant was accepted.

Nothing can be clearer than that if a grant is made for a specific, limited and defined purpose, the subject of the grant cannot be used for another, and that the grantor retains still such an interest therein as entitles him in a court of equity to insist upon the execution of the trust as originally declared and accepted. *Williams* v. *First Presbyterian Society*, 1 Ohio St., 478; *Barclay* v. *Howell's Lessee*, 6 Pet., 498 ; *Webb* v. *Moler*, 8 Ohio, 548 ; *Brown* v. *Manning*, 6 Id., 298.

2. —— right of grantor.

Now, the fifth section of the act of 1839, " An act to provide for the recording of town plats " (Laws of 1839, 454; 1843, 609), though very much wanting in clearness, and only to be understood by supplying words probably omitted in the printing, contains a substantial undertak-

ing on the part of the town or city, that lands conveyed, donated or dedicated to the public as therein contemplated, shall be held in the corporate name in trust to and for the uses and purposes set forth, expressed or intended. And it was under this act that plaintiff, with his co-owners and proprietors, made out, certified, acknowledged and recorded the plat of this town. By doing this, they declared that this tract of ground was to be a "public square," and as such it was accepted by the public. And yet in face of the terms and conditions of the grant, it is proposed to divert it to another and different purpose, a purpose not public; to subdivide it into lots, sell them and invest the proceeds in other property to be used for the same or a similar purpose.

We are agreed that the legislature cannot thus authorize the violation of the contract entered into between plaintiff and the public; and that if the act of 1864 is to have this construction, it is void. For, if the State or public can thus disregard its compact, so might plaintiff; and he could, at his pleasure, reclaim this property which he donated to the use of the public, and which the public has enjoyed for twenty-five years. And yet this would occur to every one as being dishonest and in open violation of the terms of the dedication.

*3. ——legislative power: unconstitutional act.*

The public, now represented, as it is claimed, by the defendants, took the conveyance according to its terms and conditions. If not thus, then they did not take at all, and if, taking for one purpose, they attempt to divert it to another, equity will restrain such diversion.

If the legislature should undertake to authorize an individual to use and appropriate property for a purpose violative of the terms and condition upon which it was held, no one would be found to claim that such legislative act did not impair and interfere with the obligation of the

contract. And why, we ask, is not the like rule applicable, and the like good faith required, as between a corporation, representing the public, and an individual? Why may I not affix the terms, designate the uses and purposes, upon and for which I give to the public, my farm, or my lots? And upon what principle of law or morals is it, that the legislature can say that this property may, at the option of the trustee, be used for another and different purpose? " A " dedicates his grounds for school purposes, for instance. The corporation, deeming some other place better suited to the object indicated, turns the dedicated property over to fishmongers, and tallow-chandlers, or, if you please, to merchant princes, and wealthy householders, defiantly saying, " You no longer have any interest in this property, but we can misuse the same without limit, and you cannot complain." Such a doctrine would enable the State at pleasure to trifle with the rights of individuals, and we can scarcely conceive of a doctrine which would more effectively check every disposition to give for public or charitable purposes. No, it must be, that if the right vested in the city for a particular purpose, the legislature cannot vest it for another; that, when the dedicator declared his purpose by the plat, the land cannot be sold or used for another and different one; that while the corporation took the premises as trustee, it took them with the obligations attached as well as the rights conferred; that while the legislature might give the control and management of these squares and parks to the several municipal corporations, it cannot authorize their sale and use for a purpose foreign to the object of the grant.

Without quoting, we cite the following cases: *Trustees of Watertown* v. *Cowen,* 4 Paige, 510; 2 Stra., 1004; *Commonwealth* v. *Alberger,* 1 Whart., 469; *Pomeroy* v. *Mills,* 3 Vt., 279; *Abbott* v. *Same,* Id., 521; *Adams*

v. *S. & W. R. R. Co.*, 11 Barb., 414; *Fletcher* v. *Peck*, 6 Cranch., 87; *Godfrey* v. *City of Alton*, 12 Ill., 29; Sedgwick's Constitutional and Statute Law, 343, 344; *Haight* v. *City of Keokuk*, 4 Iowa, 199; *Grant* v. *City of Davenport*, 18 Id., 179; *Le Clercq* v. *Trustees of Gallipolis*, 7 Ohio, 217; *Common Council of Indianapolis* v. *Cross*, 7 Ind., 9; *Rowans, Ex'r,* v. *Portland*, 8 B. Mon., 232; *Augusta* v. *Perkins*, 3 Id., 437.

Whether the corporation might not be given the power to part with whatever interest it possessed in property thus dedicated, and what title would thus pass, is a question not now before us. The city in this instance claims, under the act aforesaid, the absolute right to control and sell this property, insisting that plaintiff cannot be heard, either as an original proprietor or as the owner of lots fronting on the square, to deny such right. This position being held untenable, is decisive of the whole case, and the order of the court below is therefore

Affirmed.