BOARD OF EDUCATION OF CITY OF HASTINGS *v.* GILLELAND.

1. CERTIORARI—REVIEW OF EMINENT DOMAIN PROCEEDINGS—PUBLIC INTEREST.

The writ of certiorari is not available to an individual who has no direct or particular interest in the proceeding to be reviewed, unless he shows that he will suffer special injury beyond that which will affect him in common with the public or others similarly situated.

2. SAME—EMINENT DOMAIN—PARTIES.

Real property owners whose holdings did not adjoin parcels taken in a condemnation proceeding for a high school site, and who would merely be inconvenienced by the taking of the land, in having to travel one block out of the direct course because of the vacation of the public street, had no such interest as would warrant them in intervening and could not set aside the proceedings by writ of certiorari.

Certiorari to Barry; Smith, J. Submitted October 13, 1915. (Docket No. 17.) Decided April 29, 1916.

Proceedings in eminent domain by the board of education of the city of Hastings for the condemnation of a schoolhouse site. Alexander N. Gilleland and others intervened as respondents and objected to the proceedings. Judgment for petitioners on objections to the petition. Intervening respondents bring certiorari. Affirmed.

*Colgrove & Potter,* for petitioners.

*Ellis & Ellis,* for intervening respondents.

BIRD, J. The city of Hastings constitutes a single school district. It was recently decided by the district to erect a new high school building. The board of education was desirous of locating it upon a plat of ground made up of a portion of Temple Square, a portion of the City Park, and that portion of a street known as "South Broadway," which lies between them. The city council agreed to vacate these parcels on condition that the inhabitants were not opposed. A postal card vote developed that there was a majority in favor of the proposition, and the parcels were accordingly vacated by the council. For the purpose of acquiring the fee, condemnation proceedings under the statute followed, at which respondents appeared by counsel and interposed certain objections to the validity of the council proceedings, by which the parcels were vacated. Objection was made by counsel for the board that respondents had no such interest in the proceedings as gave them the right to appear as parties thereto. The circuit judge before whom the proceedings were had disposed of the questions raised on the merits, but did not rule upon petitioners' objection, save by inference in allowing respondents to be heard. The condemnation proceedings resulted in the parcels being condemned, and compensation fixed. Respondents have removed the proceedings to this court by writ of certiorari, and several questions affecting their validity

are made and argued. The question of the right of respondents to be heard in the proceedings must be first determined.

From the return of the circuit judge to the writ, it appears that the respondents are resident taxpayers of the district; that they reside on and own property fronting on South Broadway a block distant from the parcels vacated, but that they own no property adjacent to, or fronting upon, the parcels so taken. It further appears that the only inconvenience the respondents will suffer by reason of the closing of that portion of South Broadway is in traveling north from their homes. It will compel them to divert either to the east or west one block. It is a rule of law well established that a writ of certiorari is not available to an individual who has no direct or particular interest in the proceeding sought to be reviewed, unless he shows that he will suffer special injury beyond that which will affect him in common with the public or others similarly situated. *Davison* v. *Otis,* 24 Mich. 23; *People* v. *Leavitt,* 41 Mich. 470 (2 N. W. 812); *Vanderstolph* v. *Boylan,* 50 Mich. 330 (15 N. W. 495); *Wolpert* v. *Newcomb,* 106 Mich. 357 (64 N. W. 326); 6 Cyc. p. 768; 5 R. C. L. p. 256; 4 Standard Enc. of Procedure, 903. The same rule is also applied to other remedies. *People* v. *Inspectors of State Prison,* 4 Mich. 187; *Miller* v. *Grandy,* 13 Mich. 540, 551; *Smith* v. *City of Saginaw,* 81 Mich. 123, 127 (45 N. W. 964); *Thomas* v. *Hamilton,* 101 Mich. 387, 388 (59 N. W. 658); *Brophy* v. *Schindler,* 126 Mich. 341, 347 (85 N. W. 1114); *Sweet* v. *Smith,* 153 Mich. 674 (117 N. W. 59). It is held in *People* v. *Schell,* 5 Lans. (N. Y.) 352, that:

"The writ will not be sustained to review the proceedings of a highway commissioner in laying out a road, where it appears that the relator was not a party to the proceedings for laying out such road, and has no direct interest in the road, either as owner of prop-

erty over which it passes, or otherwise; the only interest which he claimed in the proceeding being that his business as a tavern keeper will be injured by the highway to be laid out, by the diversion of travel from the road on which his tavern is located."

The most that can be said of the situation here presented is that respondents will be inconvenienced by the closing of that portion of South Broadway which lies a block north of them, and in consequence they will be compelled to go one block either to the right or left. This inconvenience will not establish such an interest as will enable them to be admitted as parties to the proceeding. *Buhl* v. *Depot Co.*, 98 Mich. 596 (57 N. W. 829, 23 L. R. A. 392). In this case a very similar situation of inconvenience is presented and it is held that the mere cutting off of one's ingress and egress by the closing of a street, rendering it less convenient is *damnum absque injuria.* To the same effect see *Sioux City Seed, etc., Co.* v. *Railway Co.*, 184 Mich. 181 (150 N. W. 841); *City of Chicago* v. *Building Ass'n,* 102 Ill. 379 (40 Am. Rep. 598). The frequency with which the rule has been applied where attempts have been made to interfere with municipal action, leaves no room for doubt that it should be applied in the instant case. It is suggested, however, that a larger right to intervene exists where the municipality is dealing with parks and public grounds which have been dedicated to the public use. An examination of the reported cases discloses no such exception to the rule. 2 High on Injunctions states the rule as follows:

"And where, under a general power in a city charter to establish and regulate markets, the corporate authorities of the city are about to remove a market house, taxpayers, as such, have no sufficient ground for enjoining the removal, whatever may be the rights of adjacent proprietors and others injuriously affected thereby. So a taxpayer in a city, who files a bill in behalf of himself and other taxpayers to enjoin the city from selling a public park or square, is not entitled

to the relief when he has no land abutting upon the square, and when he has no private interest involved other than or different from the body of taxpayers." Section 1301.

In *Tifft* v. *City of Buffalo,* 65 Barb. (N. Y.) 460, the complainant sought to restrain the defendant city from selling a public square to the Union Hotel Company. It appeared that the public square was situate between Main and Washington streets; that complainant was the owner of property fronting on Main and Washington streets, but that he owned no property fronting on the park. The question being raised that complainant was not a proper party to maintain the suit, the court held "that he had no standing in a court of equity entitling him to maintain the action."

We therefore conclude that respondents did not have the required interest to authorize them to intervene in these proceedings. This leaves the court without power to consider the other important questions raised by the record. The writ, having been improvidently granted, will be dismissed, with costs to the petitioners in the condemnation proceedings.

STONE, C. J., and KUHN, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred with BIRD, J.

OSTRANDER, J. (*concurring*). This is a condemnation proceeding, the proceeding being reviewed by certiorari. The petition for a jury, filed by two members of the board of education of Hastings, sets out, among other things, that the common council of the city of Hastings vacated, discontinued, and abandoned three certain pieces of land, one of them a portion of a public park and one a street, and deeded them to the board of education, which therefore possesses all of the title to the lands formerly possessed by the said city; that the lands were originally platted by the owners thereof in the year 1836, the plat being recorded; that by virtue of the dedication evidenced by the plat,

and the statute then in force, it is believed that a base fee was conveyed to the county in trust for the purposes designated in the plat, and that by vacating a portion of the plat the lands reverted to the original owners or to the person or persons to whom the owners may have conveyed them.  The prayer is for a jury—

"to ascertain and determine the just compensation to be made for the real estate,   *   *   *   the same being required by the said board of education of said school district for a site for a school house."

The rightful owners, assuming that the land reverts, are not known.  Plaintiffs in certiorari are not, as the record is understood, owners of or interested in any property which abuts upon the vacated street or the park or Temple Square, the land sought to be condemned.  It appears that the jury determined the necessity for taking the property, and the damages were fixed at $100.

Plaintiffs in certiorari attacked in the court below, and now attack, the validity of the action of the common council in vacating the said premises, as well as the right of the board of education to fix a site for a school.  The objections made by them were overruled by the circuit judge, who, however, expressed no opinion concerning their right to appear and contest the right of the petitioners to institute and carry on the proceeding.  It is not clear whether the validity of the action of the common council in vacating the premises was passed upon, or whether the objections presented were for other reasons overruled.  The serious question presented is whether the petitioning board of education having set out an alleged title to or interest in the premises derived from the city of Hastings through certain actions of the common council of the city— made a profert of an alleged interest so derived—the validity of such derived title may be inquired into and the action of the common council investigated at the

instance of any citizen taxpayer of the city; at least, whether any citizen taxpayer may question the action vacating the park.

It is understood, from the record presented, that the park in question here was dedicated by the owners for, and has for many years been, a public park, from which fact it is assumed that the city of Hastings, or some other public authority, held the land in trust for a public park. This assumption excludes the idea that the trustee is a proprietor, or, as proprietor, has any authority over the park. *Board of Education* v. *City of Detroit*, 30 Mich. 505. Nor is the dedication here such an one as was involved in *Hinchman* v. *City of Detroit*, 9 Mich. 103, and in *Riggs* v. *Board of Education of Detroit*, 27 Mich. 262. It is explained in the case last mentioned that the interior open spaces in the original plan of the city of Detroit were set apart to such uses as the council, in its legislative capacity, might at any time provide.

When all of the proceedings shown by or referred to in the record are considered, it becomes apparent that the action of the common council and of the board of education which was taken, the validity of which is questioned, was designed to accomplish a particular purpose. The common council, it may be assumed, would not have abandoned, or surrendered, the park it held in trust unless the premises were devoted to a site for a schoolhouse. The purpose was to place at the disposal of the board of education a part of the park, a portion of a public street, and another piece of property called "Temple Square," to be used for school purposes. Pursuant to this purpose, the board of education selected the premises as a site for a school house, accepted a deed from the city, and instituted this proceeding.

The general rule is that the erection of buildings upon land dedicated and held by a municipal corpora-

tion for a park is unauthorized, and that such buildings are a public nuisance, which may be abated by any one aggrieved. 21 Am. & Eng. Enc. Law, p. 1072; *City of Hopkinsville* v. *Jarrett,* 156 Ky. 777 (162 S. W. 85, 50 L. R. A. [N. S.] 465) ; *Codman* v. *Crocker,* 203 Mass. 146 (89 N. E. 177, 25 L. R. A. [N. S.] 980, and note) ; *Porter* v. *Bridge Co.,* 200 N. Y. 234 (93 N. E. 716, 21 Am. & Eng. Ann. Cas. 684) ; *Church* v. *City of Portland,* 18 Or. 73 (22 Pac. 528, 6 L. R. A. 259, and note).

It seems to be assumed by plaintiffs in certiorari that the city of Hastings might have abandoned the park—might have declined longer to hold the land embraced therein for park purposes. The formal resolution of the common council was one "to discontinue and abolish a part of a park in the fourth ward of the city of Hastings," describing a piece of land 100 by 300 feet in quantity, without reference to the ultimate purpose for which the land was to be used. This was May 3, 1915. Objections were later on, and on June 4, 1915, overruled, and a resolution of the council was passed, donating the land in trust to the school district for schoolhouse purposes, and directing the city clerk to execute a deed of the premises to the school district, in trust, for schoolhouse purposes. It was on June 5, 1915, that the board of education determined and established the site for a schoolhouse and authorized two members of the board to institute proceedings to condemn the land.

A careful review of authorities has convinced me that my Brother BIRD is right in denying plaintiffs in certiorari the right to review, in this proceeding, the action of the common council and the action of the board of education about which they complain. A school district has authority to institute proceedings to condemn land for a schoolhouse site. Such a proceeding being instituted and concluded by a confirmed

verdict of a jury, this court should, upon certiorari, examine only the questions relating to the public character of petitioners, the public purpose to be subserved, and the regularity of the condemnation proceeding, and do this at the instance of interested persons. Petitioners are not, to this extent, more than any and all citizens of the community, interested. If public or private rights have been invaded in any of the proceedings anterior to this one, it will be time to consider them when they are properly asserted. In this proceeding we are not called upon to consider them.

STONE, C. J., and STEERE, J., concurred with OSTRANDER, J.