## Woman's Hospital League, et al. v. City of Paducah, et al.

(Decided June 18, 1920.)

From the McCracken Circuit Court on Motion of the Defendants to Dissolve Injunction.

1. Charities—Construction, Administration and Enforcement—Diversion.—A donation of money made to a municipality for a specific, limited and definite charitable purpose cannot be used by the donee for another purpose, and if applied by the latter to a different purpose it will amount to a diversion of the fund and violation of the trust. In such state of case a court of equity, at the suit of the donor, will enjoin such diversion of the fund and compel the donee to execute the trust in accordance with the terms of the gift.

2. Charities—Charitable Trust—Diversion of Money—Violation of Trust.—Where an association known as the "Woman's Hospital League," entered into a contract with the city of Paducah, evidenced by an ordinance duly passed by its board of commissioners, whereby the city agreed to erect on its own land a building styled the "Ewart Purcell Isolation Ward," to be maintained at the expense and under the control of the city as a hospital exclusively for the isolation and treatment of persons afflicted with contagious diseases, in consideration of the undertaking of the "Woman's Hospital League" to pay one-half the cost of constructing the building, and the hospital building was thereafter completed by

the city in accordance with the terms of the contract, one-half of the cost thereof being paid by the "Woman's Hospital League," and following its completion, the building was for a time conducted by the city under the designated name as a hospital for the isolation and treatment of persons afflicted with contagious diseases, but later and finally by direction of its board of commissioners, was converted without the consent of the "Woman's Hospital League" into a home for nurses and student nurses. Held, that such change in the use of the property by the city constituted a diversion of the money donated by the "Woman's Hospital League" to the construction and establishment of the hospital and also a violation of the trust for the benefit of the inhabitants of the city created by the contract under which it was erected.

MOCQUOT, BERRY & REED for plaintiffs.

J. W. HAZELIP and W. V. EATON for defendants.

OPINION BY JUDGE SETTLE—Overruling motion.

The object of the plaintiffs in bringing this action, now pending in the McCracken circuit court, was and is to prevent the defendants, city of Paducah, its mayor and board of commissioners, from diverting to a use other than that for which it was erected, dedicated and had been maintained under their control, a building in Paducah known as the "Ewart Purcell Isolation Ward," a hospital for the isolation and care of persons afflicted with contagious diseases. As a means to the end in view plaintiffs sought an injunction to restrain the alleged misuse of the building by the defendants complained of; and upon their application therefor, preliminary to a preparation of the case for trial on its merits, the judge of the circuit court granted them a temporary injunction which confines the defendants' control of the building in question to its use as an isolation ward for the care and treatment of persons afflicted with contagious diseases.

The case is now before me, a judge of the Court of Appeals, on a motion made by the defendants to dissolve the injunction. The other judges of the Court of Appeals, save Judge Clarke, who was absent, sat with me in passing on the motion, and all concur in the conclusions expressed in the opinion.

The following brief statement of the facts disclosed by the record will give an understanding of the questions presented for decision by the defendants' motion to dis-

solve the injunction. Paducah is a city of the second class, and having the commission form of government, its municipal affairs are controlled and inhabitants governed by a commission composed of its mayor and the four commissioners joined with the city as defendants to this action, all of whom were duly elected to their respective offices by the voters of the city. The plaintiff, Woman's Hospital League, is, as its title imports, an association composed of women having as its object the amelioration of human suffering and betterment of hospital conditions for the care of the sick and afflicted in Paducah, where the association exists and its work is all done. Although the city of Paducah owns, and for many years has maintained, a hospital known as the "Riverside Hospital," which is apparently adequate to the needs of its inhabitants afflicted with non-contagious ailments, it had not until moved to do. so by the action of the Woman's Hospital League and its offer of assistance to that end, provided itself with a hospital in which persons afflicted with contagious diseases could be isolated for their better treatment and to prevent the spread of such diseases in the city and surrounding territory. It was upon the initiative, therefore, of the Woman's Hospital League and by concert of action between it and the mayor and board of commissioners of the city of Paducah then in office that the building known as the "Ewart Purcell Isolation Ward" was erected, equipped and dedicated as a hospital for the isolation and care of persons afflicted with contagious diseases. The movement had its beginning in conferences between the officers of the Woman's Hospital League and a committee appointed by a resolution adopted by the mayor and city commissioners of Paducah. These conferences resulted in an agreement between the Woman's Hospital League and the city through its mayor and board of commissioners to erect the isolation hospital on substantially the following terms and plan: (1) That the building should be constructed according to plans and specifications provided by the city of Paducah, under the supervision of an architect of its appointment and upon ground owned by the city already occupied, in part, by its building known as the "Riverside Hospital;" (2) that the cost of the construction should be paid, one-half by the Woman's Hospital League and one-half by the city of Paducah; (3) that when completed, the building should be named and called the "Ewart Purcell Isola-

tion Ward'' and devoted to public use as a hospital for the isolation and care of persons afflicted with contagious diseases; (4) that the building should be under the control of the city of Paducah, through its constituted authorities, and maintained at its expense as a ward, or hospital, for the isolation and care of persons afflicted with contagious diseases.

Thereafter, in September, 1917, at a regular meeting of the board of commissioners of the city of Paducah, composed of the mayor and four commissioners then in office, an ordinance was duly passed by that body adopting and substantially setting forth in terms as already stated, the above agreement between the Woman's Hospital League and the city regarding the erection and maintenance of the Ewart Purcell Isolation Ward. It is also declared by the ordinance that the contract for the erection of the hospital had been made with a builder who was to construct it at the total price of $5,813.80, and that the half of this amount, $2,906.90, the Woman's Hospital League had theretofore ''generously donated to the city of Paducah for the construction of an isolation ward for the treatment of contagious diseases.''

It is apparent from the record that the entire agreement between the parties concerned respecting the building of the hospital in question is contained in the ordinance referred to; and as it possesses the elements essential to a valid contract and its binding effect upon the defendant, city of Paducah, as upon the plaintiffs, is established by the recorded action taken by its governing body in the manner provided by law, the city will be estopped to deny or repudiate the legal effect of its provisions. This being true, it becomes necessary to determine the meaning of the contract.

The remaining facts necessary to a full understanding of the case, are admitted; that is that the Ewart Isolation Ward or hospital was, in due course, constructed by the defendant city as provided by the agreement between it and the plaintiff, Woman's Hospital League, set forth by the ordinance passed by the former board of commissioners, and at the cost price therein specified, one-half of which was paid by the city and the other half by the Woman's Hospital League. It is also admitted that the Woman's Hospital League, upon the completion of the new hospital, donated, at a cost to it of several hundred dollars, furniture and other

paraphernalia for the furnishing and equipment of ten rooms and four wards of the building; and that shortly after its completion the hospital, in an address delivered by Mrs. Purcell, president of the Woman's Hospital League, and one of acceptance from the then mayor of the city of Paducah, was publicly delivered to the city and formally dedicated to the use for which it was designed, under the name "Ewart Purcell Isolation Ward;" from which time until shortly before the institution of this action the building was exclusively used as a hospital for isolating and caring for persons afflicted with contagious diseases and several such patients cared for therein. It is a further admitted fact that such use of the hospital ended with the adoption by the present mayor and board of commissioners of the city of Paducah of a resolution, or ordinance, discontinuing its use as a hospital for the isolation and care of persons having contagious diseases, and converting it into a home for nurses employed in the adjacent Riverside Hospital and student nurses under training in the city for that occupation, for which purpose the property was being used, when the injunction preventing such further use of it by the defendants, was granted.

The averments of the petition fully set forth the contention of the plaintiffs; which is, that the donation of the fund by the Woman's Hospital League to the defendant, city of Paducah, for the establishment of the Ewart Purcell Isolation Ward was made for a specified charitable or public use under a contract between the donor and donee to that effect, which created a trust whereby the use of the building was, and is to be, devoted under the control of the donee as trustee, exclusively to the isolation and care of persons afflicted with contagious diseases; and that having accepted the donation with that understanding the donee and trustee is without power to devote the property to any other use; therefore its application by the latter to use as a home for nurses and student nurses, was and is a violation of the trust, the continuance of which a court of equity may prevent by injunction as was here done.

To this contention of the plaintiffs, the answer of the defendants interposes substantially the following grounds of defense: (1) That the contract between the Woman's Hospital League and the mayor and board of commissioners of the city of Paducah respecting the Ewart Purcell Isolation Ward is not binding upon the

city of Paducah and that no trust was thereby created; (2) that the city being the owner of the ground upon which the Ewart Purcell Isolation Ward was erected and of that building after its erection, notwithstanding its acceptance from the Woman's Hospital League of one-half of the cost of the building and undertaking to maintain it as a hospital for the isolation and care of persons afflicted with contagious diseases, had the right at any time to discontinue it for such use and make of it a home for nurses and student nurses, or devote it to any other purpose it might deem proper.

These contentions of the defendants rest upon the single basis and assumption that as by law the right or duty of a city to maintain an eleemosynary institution, such as a hospital for the benefit of the sick and afflicted among its inhabitants, is imposed upon its governing authorities and the exercise of such right or performance of such duty is a governmental function which cannot be delegated by the municipality to others, the city of Paducah was without power to enter into a contract like that here involved and, it is argued, that for the court to declare it bound by the contract would be to hold that it had surrendered or delegated to the Woman's Hospital League its govermental power to control for the good of its inhabitants the building in question.

The fundamental error in this contention lies in its assumption that the city's compliance with the terms of the contract would require it to yield its govermental right of control over the hospital to the Woman's Hospital League. The latter is not seeking to deprive the city of Paducah of its control of the hospital, but only asking that it be required to devote it to the humane use required by the ordinance of its own adoption, containing the agreement by which the Woman's Hospital League was induced to contribute one-half the cost of constructing the building, and practically the whole of the cost of equipping it, upon the undertaking of the city, expressed in the ordinance, that it would thereafter be maintained by it and at its expense for the particular purpose specified by the ordinance and no other. That such was the manifest meaning of the parties from the beginning and at all times is clear from the language of the ordinance, the written communication from the Woman's Hospital League to the mayor and board of commissioners regarding their joint participation in the construction of the hospital building and the object

thereof, appearing in the record; and also from the remarks of the representatives of the league and city, by whom addresses were delivered when the building was publicly dedicated to the use for which it was designed.

Kentucky Statutes, section 3058, subsection 1, relating to cities of the second class, empower them, among other things, to establish and maintain public hospitals and infirmaries within, or without, the city, and to secure the general health of the inhabitants by any necessary measures. Section 3235c, subsection 12, vests in the mayor and four commissioners of such cities all legislative, executive and administrative power necessary to its government; and subsequent sections more particularly define their duties. But nowhere in these statutes will be found any provision declaring such an arrangement or contract as that entered into by the defendant, city of Paducah, and the plaintiff, Woman's Hospital League, respecting the Ewart Purcell Isolation Ward, invalid. If the contract had provided for a conveyance of the land of the city to the Woman's Hospital League in consideration of its undertaking to erect a public hospital thereon and maintain it for the benefit of the city, free of control by the latter; or the city had by the contract permitted the Woman's Hospital League to take exclusive control of and maintain for the benefit of its inhabitants a public hospital erected on land of the city, in consideration of its sharing equally with the city the cost of its erection, in either of the cases supposed it might well be said that there had been a delegation by the city to the Woman's Hospital League of a govermental power which the city alone, through its mayor and commissioners, was authorized by law to exercise. But in the instant case the city by its contract with the Woman's Hospital League yielded to it no governmental function. The city constructed the hospital upon ground of its own, according to its own plans, accepting, however, from the Woman's Hospital League a contribution covering half its cost, in consideration of the payment of which the city obligated itself to maintain under its sole control and at its own expense without limit as to time, the hospital for the purpose stipulated in the ordinance evidencing the contract.

Such contracts have often been approved by the courts and the diversion of the property to uses other than those to which it was dedicated to the city condemned. One notable case in which this was done is

that of Hopkinsville v. Jarrett, 156 Ky. 777 (50 L. R. A. 465), in which this court held, that the erection of a public library building on part of a tract of land devised to the city of Hopkinsville upon condition that it be used forever as a public park, was inconsistent with the purpose for which the park was dedicated, and amounted to a diversion. The opinion calls attention to the distinction to be observed between dedications made by the public and those made by individuals, and declares that the former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted.   Spires v. Los Angeles, 150 Cal. 64; Riverside v. McClean, 210 Ill. 208.   But perhaps the most striking declaration of the opinion respecting the doctrine under consideration is found in the following statement, which is supported by a citation of numerous authorities: "It is likewise well settled that, if a grant or devise is made for a specific, limited and definite purpose, the subject of the grant cannot be used for another purpose, and a diversion of the subject of the trust from the purposes for which the trust was created may be enjoined." Warren v. Lyons, 22 Iowa 351; Church v. Portland, 18 Or. 73; Barnum v. Baltimore, 62 Md. 275; Library Asso. v. Lobsitz, 35 Okla. 576; Rowzee v. Pierce, 75 Miss. 846; Board of Education v. Kansas City, 62 Kansas 734; McIntyre v. El Paso County, 15 Colo. App. 78.

In Roach v. Hopkinsville, 13 R. 543, decided by the Superior Court and cited with approval in the opinion of the case, *supra,* it was held that a bequest of money to the city for "the establishment and erection of a hydrant or fountain on some of the public streets of the city, which shall be free to the public for supplying pure, fresh, cool drinking water for all passers-by," did not give the city the right to use the sum bequeathed in digging cisterns or sinking wells at one or more places on the streets of the city.

It is true that the case of Hopkinsville v. Jarrett, *supra,* differs in point of fact from the instant case in that the land dedicated to the city of Hopkinsville for a park was before its devise wholly the property of the donor, nothing being required of the city but to accept it and maintain it as a park, whereas in this case there was no donation of the entire cost of the hospital by the Woman's Hospital League, but the subject of the grant from it was the money which paid half the cost of con-

structing the hospital and the further sum required to furnish it with the necessary equipment. The difference in the facts referred to cannot, however, prevent the application to this case of the principle applied in Hopkinsville v. Jarrett. The grant or donation in this case, as in that, was for a specific, limited and definite purpose, and was accepted and applied to the required purpose by the city of Paducah, resulting in the construction of the hospital building and the putting of it for a time by the city to the use for which the donation from the plaintiff, Woman's Hospital League, was made. Manifestly, the facts establish a trust for the benefit of the inhabitants of the city of Paducah which the authorities of that city charged with the duty undertook to execute and must yet carry out according to its terms.

A case quite similar in point of fact to the instant case is that of Perry Public Library v. Lobsitz, 35 Okla. 576, 45 L. R. A. (N. S.) 368. It appears from the opinion that Mr. Andrew Carnegie offered to the city of Perry, State of Oklahoma, $10,000.00, with which to construct a free public library upon condition that the city council by resolution would bind the city to furnish a site for the building and maintain a free library therein at a cost to the city of not less than $1,000.00 per year. The city council by resolution accepted the donation and agreed to comply with the terms thereof by providing a site for the library building and levying a tax on the property of the city sufficient to maintain a free public library in the building at a cost of not less than $1,000.00 per year. The construction of the building soon followed at a cost to the donor of $10,000.00, and a library of 1,300 volumes was placed in the building by the numerout friends of the institution contributing them. Thereupon the building was occupied as a library, but shortly thereafter the city council took steps to establish in the building the offices of the city, including those of the mayor, city clerk, police judge, chamber of the city council and authorized the use of a portion of the building for commercial club purposes and for public conventions. Certain taxpayers of the city thereupon brought an action to enjoin such use of the building by the city and its officers. The lower court refused the injunction and on the appeal of the case the Supreme Court reversed the judgment, holding that the title to the library building was not absolute in the

city, free from any restriction, and that its title to same was that of a trustee for the benefit of the public; that the use to which the city's officers were putting the building was a diversion which a court of equity had jurisdiction to prevent by injunction and to compel the execution of the trust by the city pursuant to the terms of the gift.   In that case, as in this, one of the defenses relied on by the officers of the city was that the law gave them control of all public buildings of the city and authority to say for what purposes they might be used, but in overruling this ground of defense the court said:

"In the case at bar the title of the municipal corporation to the library is not absolute.   In accepting the gift from the donor the city took it with the limitations and obligations imposed by the donor, which were that the same should be a free public library and that the city should furnish annually not less than $1,000.00 for the support and maintenance thereof."

Another ground of defense relied on in the instant case was also made by the city of Perry in the case, *supra*, that is, that as the library could be maintained in the building without the use of the whole of it for that purpose, the occupancy of the remainder for purposes of the city would not amount to a diversion of the property.   In rejecting this contention the court said: "But we do not understand that the fact that the *cestui que trust* may not be in absolute need of the benefits of the trust ever authorizes the trustee to convert the trust, or a portion thereof, to its own use.   For the same reason, upon receipt of the gift the municipal authorities might have said that a $5,000.00 building would prove fully adequate for a public library, and devoted the other $5,000.00 to building a separate building for a city hall.   But a statement of this contention demonstrates its unsoundness.   By accepting the gift, the city bound itself to levy each year the sum of $1,000.00, with which to keep up and support the free public library. It cannot levy and collect this sum of money and expend a part thereof in keeping up the library and a part in maintaining the library as a city hall for the accommodation of its officers and of private or public organizations, such as commercial clubs, without a misappropriation of the funds so levied and a violation of the trust; and, to prevent their doing so, they may be enjoined at the suit of the taxpayers of the city and beneficiaries of

the trust. Kellogg v. School District, 13 Okla. 285, 74 Pac. 110; Marlow v. School District, 29 Okla. 304, 116 Pac. 797; Sexton v. Smith, 32 Okla. 441, 122 Pac. 686.''

The applicability of the above reasoning to the instant case is patent. The fact that there has so far been little use made of the Ewart Purcell Isolation Ward, or that there may in the future be long intervals of time during which no patients will need to be cared for therein, affords no ground for the City of Paducah's use of the building for the purpose to which it is attempting to put it. Diseases that are contagious are generally epidemic and as epidemics come and go unexpectedly, it is as necessary when they do not exist in a city as when they prevail therein, that a hospital maintained in such city for the isolation and care of the victims of such diseases, be at all times kept in readiness for their reception and treatment, and also to prevent the spread of the disease among others in the city and adjacent territory. All this was in contemplation of the parties participating in the erection of the Ewart Purcell Isolation Ward when they designed, built and established it; consequently, it was never their intention or expectation that the building or any part of it when not occupied by patients having contagious diseases, should be used by the city of Paducah for other purposes. Hence, its occupancy, by direction of the city authorities as a home for nurses and student nurses, constitutes a diversion of the property to an unlawful use.

Another case, analogous in principle and the questions involved, to the case at bar is that of Cary Library v. Bliss, 151 Mass. 364, quoted with approval in Perry Public Library v. Lobsitz, *supra*. In that case in order to establish a public library in the city of Lexington, the donor made a gift of $1,000.00, in accordance with the terms of a letter from her to the city authorities accompanying the gift. Her letter required the town, as a condition precedent to receiving the gift, to vote to establish a free public library and provide a sum of money toward its support which was to be supplemented by the income from the fund furnished by her. After the library was established and other gifts had been made by her to its support it was maintained for a time in accordance with the conditions of the gift. But later the legislature passed an act which

authorized the city to transfer to a corporation all the funds and property held by the city for the benefit of the library; the corporation to take and hold the property under the terms of the donor, and to administer it in the same manner it had been administered by the city. In the litigation that arose over the right of the corporation to control the property the court held that the statute undertook materially to change the execution of the trust, and it was, therefore, void. In the opinion it is said:

"The acceptance by the town of Maria Cary's proposition contained in her letter created a contract, which was executed on her part by the payment of the money, and which continued binding on the town and the trustees as to their conduct in reference to the charity."

It is manifest from the authorities, *supra,* that the city of Paducah had the power to accept the donation of the Woman's Hospital League with the limitations and obligations imposed thereon by the donor; and as its acceptance created a trust requiring the city to maintain for the benefit of the public the Ewart Purcell Isolation Ward devoted to the single object of isolating and caring for persons afflicted with contagious diseases, and there is nothing in the statute law of the state preventing a municipal corporation from taking and holding property in trust for such a charitable public purpose, it may be compelled by a court of equity to execute the trust according to its terms. The duration of the trust is a matter to be controlled by the terms of the contract under which the donation was made and accepted. The contract in this case fixes no limit upon the continuance of the trust, but considering the charitable motive of the parties to it, the manner and object of its creation, and the fact that the necessity for its continuance will increase with the years to come, it will be presumed that it was contemplated, both by the Woman's Hospital League and the authorities of the city of Paducah, that the trust would continue until such time in the future as an increase in the population of the city would render the Ewart Purcell Isolation Ward inadequate in size and equipment to meet the needs of those entitled to its shelter.

It is not intended to declare in this opinion that the mayor and commissioners of the city of Paducah have not the power sooner, and after a fair test by its use

in the isolation and care of persons afflicted with contagious diseases, to determine whether the hospital in question is no longer adequate to the needs of those intended to be benefited by it, and upon so finding discontinue its use on that ground; but it would be inequitable to permit the city to do this without repaying to the Woman's Hospital League the money they contributed to the erection and equipment of the hospital; and if the city fail to make such payment it should be compelled by the judgment of a court to do so. This question, however, is not now presented by the pleadings for decision; and while some claim is made by defendants' counsel of such inadequateness of the hospital, no satisfactory proof is made of that fact. Moreover, in view of the very recent construction of the hospital building according to plans and specifications furnished by the city and its acceptance of the building when completed, it does not lie in its mouth or those of its governing authorities to claim that the hospital building is in any manner inadequate to the purpose for which it was erected.

As on the facts presented the granting of the injunction by the circuit judge was authorized, the motion of the defendants to dissolve it is overruled.