## CITY OF FORT WORTH et al. v. BURNETT et al.

No. 13814.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 18, 1938.

Rehearing Denied April 8, 1938.

Questions certified to Supreme Court answered, 114 S.W.2d 220.

R. E. Rouer, Geo. C. Kemble, R. B. Young, Jr., and R. M. Rowland, all of Fort Worth, for appellants.

Cantey, Hanger & McMahon and Samuels, Foster, Brown & McGee, all of Fort Worth, for appellees.

BROWN, Justice.

In the year 1919, S. B. Burnett, a wealthy citizen of the City of Fort Worth, Tex., executed and delivered to said city a deed using the following language:

"Know All Men By These Presents: Having now passed the age of three score and ten, sensible of the advantages it will confer on the community and desirous of contributing something out of my fortune while yet I am alive to the welfare and happiness of the people among whom I dwell and as a visible expression of the love and affection I bore to my two children, Anne and Burk, in their lifetime, I, S. B. Burnett, of the City of Fort Worth, Tarrant County, Texas, do hereby give

unto the City of Fort Worth, a Municipal Corporation, duly incorporated under the laws of the State of Texas, for the purpose of creating a park and place of recreation in the very heart of the City.

"All those certain lots, tracts or parcels of land lying and being situated within the corporate limits of the City of Fort Worth, Tarrant County, Texas, and more particularly as follows, towit: (Here follows the description of nine parcels of land conveyed).

"Provided, nevertheless, that this gift is made upon the following conditions and stipulations, the due observance of which is essential to the validity and continuance of this grant.

"The said City of Fort Worth in taking under this instrument and in accepting this gift agrees:

"(1) That said property shall forthwith be set apart, dedicated, treated and maintained by the governing authorities of said City as a public park and breathing-place for the use of the people under proper regulations and control, where the poor, alike with the rich, may assemble as a place of recreation and particularly for relief against the heat of our summers, and as a resting spot for tired mothers and their children. To that end said City of Fort Worth shall never use said property and premises for any other purpose than as a public park and meeting place and any other use thereof shall work a forfeiture of this gift.

"(2) That said property, nor any part thereof, shall never be commercialized, sold, exchanged or encumbered by said City.

"(3) That said City shall provide annually a sufficient fund for the maintenance and care of said park and keep same in a trim and tidy condition with such ornament of tree, shrub and flower, as will make it attractive to the eye and conducive to the health, happiness and good morals of the community.

"(4) That said property will be policed as to shield it from depredation and vandalism and so as to prevent disorder and misbehavior therein and thereabout and thereby make it a safe and proper place for the resort of women and children.

"(5) That said City shall name and style said park (by which name it shall ever be known) 'The Burnett Memorial Park,' not for my own vain glory but to perpetuate the memory of my two children, Anne and Burk, now long gone from me, and I, as the donor of the Park, and as the father of said children, shall be permitted and allowed to erect at the entrance of said park, or within the confines thereof, either or both, a monument designed to express a father's love of his children, with such suitable inscription as I may choose to place thereon.

"(6) Without binding myself to do so, I reserve the right at any time I may elect, to make such improvements in and about said Park as I may consider suitable and appropriate and to build such structures, houses, monuments and memorials therein as, in my judgment, may serve to enhance its beauty and usefulness to the City and the general public.

"(7) If, in the meantime, since I acquired said property, taxes and assessments have accrued thereon, same shall be borne by the said City of Fort Worth.

"Failure on the part of the said City of Fort Worth, the donee of this gift, to keep and observe any one of the terms or conditions annexed to this gift, shall entitle me or my heirs or assigns, at any time after such omission or breach, to declare the gift forfeit (and no lapse of time shall be considered a waiver of such terms or conditions) and then and thereupon said premises and property shall revert to me or my heirs or assigns.

"In witness whereof, I have hereunto subscribed my name, in the City of Fort Worth, Texas, on this 21st day of June, A. D. 1919.

"[Signed.] S. B. Burnett."

When such deed was tendered, the city commissioners accepted same, and the following appears in the minutes of June 24, 1919:

"Deed of gift, tendered by Burk Burnett, of certain tracts of land fully described and set out in said deed, for park purposes together with conditions and stipulations governing said gift was unanimously accepted and conditions and stipulations agreed to. Following remarks by Captain Burnett, the donor, and members of the City Commission a vote of thanks for the splendid gift was extended by the Commission.

"Proper ordinance accepting said deed of gift was unanimously adopted."

The city ordinance referred to has not been located, but its contents were established before the trial court.

Within two years after the happening of the foregoing events, Mr. Burnett made his will, in which we find the following language: "Inasmuch as I have heretofore conveyed to the municipality of Fort Worth certain real property in the very heart of the residential district, in the vicinity of Lamar and Burnett Streets, in said City, to be used as a public park, where the people may assemble and enjoy recreation and respite from the heat and burden of the day, in order that this park may be improved and made comely to the eye, I do hereby will and direct that the sum of Fifty Thousand ($50,000.00) Dollars be set apart out of my estate and used for the foregoing purpose and to that end, I do hereby select my daughter-in-law, Ollie Burnett, and my attorney and friend, Sidney L. Samuels, to act as trustee in the performance of this bequest, and for that purpose, the title to the fund hereby bequeathed is vested in them to be used and applied in the manner and way hereinabove directed, leaving to their discretion the employment of the means best adapted to bring this purpose about."

The sum of money thus mentioned and devised was used by the city to make certain improvements in and on the park property, after Mr. Burnett's death, in 1922, and after the will was admitted to probate.

The lands in question have been used, since the deed was accepted by the city, solely as a public park.

Within the last few days, the city council of said city (which is a home-rule city, operating under a charter creating a council-manager form of government), acting with the members of the library board and park board of such city, determined to erect upon said park property a public library, and have planned to remove and destroy the major portion of the improvements placed on the same with Mr. Burnett's devise, in order to make room for the library building.

When this intention was made known to the public generally, the heirs of Mr. Burnett, joined by the trustees of the estate of the deceased Burnett, brought suit in the district court of Tarrant county against the said city, its mayor and councilmen, and the members of the park and library boards of the city, asking for a temporary injunction to restrain the defendants from removing and destroying the improvements above mentioned, and to restrain them from building a public library on said park property,

and from thus using the park property in a manner alleged to be a manifest diversion by the defendants.

On notice, after a hearing before the court, judgment was rendered granting the temporary injunction prayed for, and the defendants appeal.

The sole question that interests us is, What was the intention of the grantor, Burnett, as expressed in his deed, unless it can be said that such instrument is ambiguous?

We do not believe there is any ambiguity in the deed, and so hold.

At the outset, let it be remembered that the City of Fort Worth is not attempting to deal with property that has been condemned by such city for public use, nor with property that has been given to the city unconditionally.

Here we have the city taking title through a deed which expressly provides for named conditions and limitations on which the validity of the grant rests.

The city was under no obligation to accept the grant with the imposed conditions and limitations, and could have refused the grant. But having expressly accepted it with its "conditions and stipulations" and having "agreed thereto," it cannot now ignore or avoid them. It is bound by them, regardless of the fact that, in the light of the year 1938, such conditional acceptance in 1919 may now appear to have been unwise, and regardless of the further fact that the city may now, or at some future time, find a far better use for the property than that for which it was given nineteen years ago.

If the language used in Mr. Burnett's deed and the conditions found therein plainly exclude the right of the city to employ the property conveyed by Mr. Burnett, or even a reasonable amount thereof, for the erection of a public library thereon, then the judgment of the trial court should be approved.

In the first paragraph of the deed, Mr. Burnett states that the lands are given to the City of Fort Worth "for the purpose of creating a park and place of recreation in the very heart of the City."

After a description of the property conveyed, the instrument contains the following language:

"Provided, nevertheless, that this gift is made upon the following conditions and

stipulations the due observance of which is essential to the validity and continuance of this grant.

"The said City of Fort Worth, in taking under this instrument and in accepting this gift. agrees:

"(1) That said property shall forthwith be set apart, dedicated, treated and maintained by the governing authorities of said City as a public park and breathing-place for the use of the people under proper regulations and control, where the poor, alike with the rich, may assemble as a place of recreation and particularly for relief against the heat of our summers, and as a resting spot for tired mothers with their children. To that end said City of Fort Worth shall never use said property and premises for any other purpose than as a public park and meeting place and any other use thereof shall work a forfeiture of this gift."

The use of the words "set apart, dedicated, treated and maintained * * * as a public park and breathing-place for the use of the people under proper regulations and control, where the poor, alike with the rich, may assemble as a place of recreation and particularly for relief against the heat of our summers, and as a resting spot for tired mothers with their children," not only excludes the idea of ever using any part of the property as a site for a public library, but such use appears to us, under the very language employed by the grantor, wholly inconsistent with the expressed purpose of the donor.

"A public park and breathing place * * * where the poor, alike with the rich, may assemble as a place of recreation and particularly for relief against the heat of our summers, and as a resting spot for tired mothers with their children," indicates an intention to create an open park.

When reading these words, we see plots of grass, shade trees, benches, and shrubs and flowers to please the eye and add to the attractiveness of the "place of recreation" and "resting spot for tired mothers with their children."

Assuredly, a library is a collection of books to be used for study, or read for pleasure.

■ Mr. Burnett's deed discloses that he used the words "place of recreation" in their ordinary sense; that he was thinking of a place where children could play and others could rest and enjoy the comforts of an ordinary public park. A certain restricted type of recreation is found in reading books for the pleasure thus derived, but this restricted recreation is not for "the poor, alike with the rich," because many who are "poor" can. obtain no such recreation as is thus afforded the educated to whom it falls as an acquired privilege. We do not believe that the study of books is in any sense a recreation. Rather do we believe that such is work. We have so found it in school, in our homes, and in our callings.

A library is not erected as "a resting spot." No such idea ever entered the mind of any one who has established one for either public or private use.

Most assuredly a public library is no place in which the people may assemble "for relief against the heat of our summers" and it cannot be used "as a resting spot for tired mothers with their children."

The laughter and prattle of children at play is more beautiful than the ·tinkle of gold and silver, and much more to be desired; but a public library is no playground for children, and their laughter and prattle would become a decided nuisance to one who uses a public library for the purposes for which it is created.

In the third and fourth paragraphs of the deed, the city is obligated to provide annually a sufficient fund to maintain the park, to "keep same in a trim and tidy condition with such ornament of tree, shrub and flower, as will make it attractive to the eye and conducive to the health, happiness and good morals of the community," and to police the park so as "to shield it from depredation and vandalism and so as to prevent disorder and misbehavior therein and thereabout and thereby make it a safe and proper place for the resort of women and children."

A library building cannot stand on the same spot where ornamental trees and shrubs and flowers grow. These make the park more beautiful, its resting spots more restful, and its use as a public park more desirable.

There is no more need of police protection to shield a public library "from depredation and vandalism and so as to prevent disorder and misbehavior therein and thereabout and thereby make it a safe and proper place for the.resort of women and children," than there is need for such police protection of any other public or private building within the boundaries of the city.

We find that the New International Encyclopaedia has this to say in defining a library: "It is generally held that the library has three functions: (1) as a storehouse of books and knowledge; (2) as a laboratory for study and research; (3) as affording sane recreation."

In paragraph 5 of the deed, Mr. Burnett made it plain that the lands conveyed by him should be named and forever known as "The Burnett Memorial Park," for the purpose of perpetuating the memories of his son and daughter, who had long since passed away, and he reserved the right to erect, at the entrance or within the grounds, either or both, a monument to express the love that he bore these departed children.

Without expressly binding himself to do so, Mr. Burnett reserved the right "to make such improvements in and about said Park as I may consider suitable and appropriate and to build such structures, houses, monuments and memorials therein as, in my judgment, may serve to enhance its beauty and usefulness to the City and the general public."

The language thus used excludes the idea of the right of the city to build any structure, houses, monuments, or memorials that the donor has not provided for.

Mr. Burnett has created a memorial park to perpetuate the memories of his departed children, and the City of Forth Worth cannot erect a library thereon. To permit it to do so is to allow the city to repudiate the trust that was created by Mr. Burnett's deed; a trust which the city accepted and contracted to hold forever sacred.

In the Kentucky case of City of Hopkinsville et al. v. Jarrett et al., 156 Ky. 777, 162 S.W. 85, 86, 50 L.R.A.,N.S., 465, the authorities are reviewed at length. The property in question was devised to said city by one Latham, and his will, after describing the property, recites: "This devise is upon condition that said lot shall be used forever as a public park, and that the park be named, 'Peace Park,' * * * I give, devise and bequeath to the city of Hopkinsville the sum of ten thousand dollars ($10,000.00) to prepare and beautify this warehouse lot for park purposes."

The city of Hopkinsville undertook to erect a public library on this park property, and the right was denied.

■ In commenting on the difference between dedications made by individuals and those made by the public, the opinion states: "A different construction is placed upon dedications made by individuals from those made by the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted."

In denying the city of Hopkinsville the right to erect a library on the park property, the court uses this language: "In the case under consideration the dedication was made by a private individual for a specific public use. The property was accepted by the city in accordance with the terms of the devise; that is, that it should be forever used as a public park. It is clear, therefore, that it was never intended by the devisor that it should be used for any other purpose. While in a sense it was devised for the enjoyment of the public in general, it is equally manifest that it was to be enjoyed only as a public park and not in some other way equally enjoyable. It is doubtful if it can be said that one who declares to perpetuate his name by a public gift is actuated by a puerile motive. There is in the human heart the desire to be remembered not only as a man of high character but as a generous and public spirited citizen, willing to contribute to the happiness of his fellow men. It may be that in making the devise in question Mr. Latham was actuated by such a motive. At any rate, he had the right to associate the gift with his own name and to impose on the gift any condition not unreasonable or contrary to public policy. The use of the land, therefore, as a site for a public library would not only defeat his purpose, but the monument which he intended for himself, even if not lost sight of by its use for another purpose, would at least have to be shared with another. We therefore conclude that the use of the land in question for a public library is inconsistent with the purposes and terms of the devise and amounts to a diversion."

The case quoted from has been followed and cited a number of times. We believe its pronouncements are sound.

■ It seems idle to us to contend that only a certain fraction of "The Burnett Memorial Park" will be used for the erection of the public library. If the present city officers may use the fraction that is now needed for such purpose, when the growth of the city demands a larger library, the future city officers could make use of all but a fractional part of the grounds for a library building, and thus, to all practical intents and purposes, destroy the very use-

to which the land was dedicated by Mr. Burnett. We hold that no part of the lands granted by Mr. Burnett may be used by the City of Fort Worth for the erection of a public library thereon, and that the trial court did not err in granting the prayer for a temporary injunction restraining the city from removing and destroying the present improvements and from erecting a public library thereon.

We are amply supported by the following authorities, in addition to one from which we have quoted: O'Neal v. City of Sherman, 77 Tex. 182, 14 S.W. 31, 19 Am. St.Rep. 743; Griffith v. Allison, 128 Tex. 86, 96 S.W.2d 74; Roaring Springs Townsite Co. v. Paducah Telephone Co., 109 Tex. 452, 212 S.W. 147; City of Houston v. Scanlan, 120 Tex. 264, 37 S.W.2d 718; Ladies' Benevolent Society v. Magnolia Cemetery Co., Tex.Com.App., 288 S.W. 812; Wolf v. Brass, 72 Tex. 133, 12 S.W. 159; Harris County v. Taylor et al., 58 Tex. 690; Lamar County v. Clements, 49 Tex. 347, 349; Clement v. City of Paris, 107 Tex. 200, 204, 175 S.W. 672; Anderson v. Thomas, 166 La. 512, 117 So. 573; Williams v. Gallatin, 229 N.Y. 248, 128 N.E. 121, 18 A.L.R. 1238; Collier et al. v. Baker, Com'r, 160 Tenn. 571, 27 S.W.2d 1085; Beth Israel Hospital Ass'n v. Moses, Com'r, 275 N.Y. 209, 9 N.E.2d 838; Warren v. Lyons City, 22 Iowa 351; City of Chicago v. Ward, 169 Ill. 392, 48 N.E. 927, 38 L.R.A. 849, 61 Am.St.Rep. 185; McIntyre v. Board of Com'rs, 15 Colo.App. 78, 61 P. 237; Melin v. Community Consolidated School Dist., 312 Ill. 376, 144 N.E. 13; Sharp v. City of Guthrie, Okl.Sup., 145 P. 764; City of Moline v. Greene, 252 Ill. 475, 96 N.E. 911, 37 L.R.A.,N.S., 104.

Moved by a patriotic desire to see this litigation disposed of speedily, we have extended every courtesy to the appellants and have advanced the cause sooner than we have ever advanced any other case before this court. We have done this on the theory that the rights of 175,000 of citizens of the City of Fort Worth are involved.

In the very nature of things, it has been a serious task to review the record and the many authorities presented in order to arrive at a definite conclusion on our part, and we have been compelled to forego the usual right and privilege of distinguishing, in the opinion, the authorities relied upon by the losing litigant.

Suffice it to say, that we do not consider that the authorities cited by the appellants support appellants' contentions, as applied to the case at bar, and, in our opinion, they are easily distinguishable from the authorities that support the principles involved in the instant case.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Immediately upon rendition of judgment by this court affirming the judgment of the trial court, at our request the appellants filed motion for rehearing of the cause, and we immediately certified the case to the Supreme Court of the state of Texas, in which certificate we submitted two questions, as follows:

(1). Is the deed from S. B. Burnett to the City of Forth Worth ambiguous, so as to let in parol testimony to explain it and aid in construing it?

(2). If said deed is not ambiguous, then do its terms forbid, by express words or by clear implication, the erection and maintenance by the City of Fort Worth of a public library on the land embraced in the said Burnett Memorial Park?

On March the 18th, A. D. 1938, in an opinion rendered by the Commission of Appeals and adopted by the Supreme Court of Texas, 114 S.W.2d 220, the first question certified was answered "No," and the second question was answered "Yes."

In the original opinion we specially cited and quoted from City of Hopkinsville et al. v. Jarrett et al., 156 Ky. 777, 162 S.W. 85, 50 L.R.A.,N.S., 465. We considered the opinion in that case a leading authority, and, being pressed for time, simply stated the fact that such case had been followed and cited a number of times. We now desire to show that such opinion was specifically approved by the Supreme Court of Kentucky in Woman's Hospital League v. City of Paducah, 188 Ky. 604, 223 S.W. 159, Massey v. City of Bowling Green, 206 Ky. 692, 268 S.W. 348, and City of Covington v. Union Light, Heat & Power Co., 243 Ky. 591, 49 S.W.2d 580; by the appellate court of California in Hall v. Fairchild-Gilmore-Wilton Co., 66 Cal.App. 615, 227 P. 649; by the Supreme Court of Tennessee in Board of Park Commissioners v. City of Nashville, 134 Tenn. 612, 185 S.W. 694; by the Supreme Court of Michigan in Board of Education v. Gilleland, 191 Mich. 276, 157 N.W. 609, L.R.A.1916E, 468; and by the Court of Appeals of New York in Williams v. Gallatin, 229 N.Y. 248, 128 N.E.

121, 18 A.L.R. 1238, Campbell v. Town of Hamburg, 156 Misc. 134, 281 N.Y.S. 753, and Beth Israel Hospital Ass'n v. Moses, 275 N.Y. 209, 9 N.E.2d 838; and by the federal court in Southern Pacific Co. v. Reno, D.C., 257 F. 450.

It is suggested in the motion for rehearing that in affirming the judgment of the trial court we have gone too far and that thereby the matter of the discretionary powers of the Fort Worth city council to make any changes in the improvements in the said park have been finally adjudicated by the trial court and by us. The position is untenable. Nothing was before the trial court save the threatened action of the appellants to remove and destroy improvements, now existent in the park, for the purpose of erecting a public library on the premises. The trial court temporarily enjoined such acts and by its order maintained the status quo until the case could be finally determined by the trial court. We affirmed that judgment.

The issue raised in the motion for rehearing was not raised before the trial court, and therefore is not before us.

The motion for rehearing is overruled.